NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSICA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.H., *Appellees*.

No. 1 CA-JV 15-0013
FILED 9-1-2015

Appeal from the Superior Court in Maricopa County
Nos. JD21461, JS17421
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

**B R O W N**, Chief Judge:

¶1        Jessica H. ("Mother") appeals the juvenile court's order terminating her parental rights to her son, C.H.  For the following reasons, we affirm.

## BACKGROUND

¶2        C.H., born in December 2013, is the biological child of Mother and Christopher H. ("Father").[1]  Mother and Father also have an older child, X.H., born in January 2012, who was the subject of an earlier termination proceeding.[2]

¶3        One day after C.H.'s birth, DCS responded to a report that Mother had tested positive for methamphetamines and that C.H. had tested positive for amphetamines.  DCS took C.H. into temporary custody and filed a dependency petition soon thereafter alleging Mother had neglected the child due to substance abuse.  DCS referred Mother for a mandatory hair follicle drug test, which Mother did not complete.  Mother was scheduled to undergo a psychological evaluation, but did not attend.  Mother received a TERROS referral, but because she never responded to outreach calls, her referral was closed out.

---

[1]      Father also appealed the juvenile court's termination of his parental rights to C.H., but the appeal was dismissed.

[2]      In July 2014, the juvenile court terminated Mother's and Father's parental rights to X.H. pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(b) (child under age three has been in out-of-home placement for six months; parent has substantially neglected child or willfully refused to remedy circumstances leading to placement).  Mother appealed, and this court affirmed. *See Jessica H. v. Dep't of Child Safety*, 1 CA-JV 14-0201, 2015 WL 3647569 (Ariz. App. June 11, 2015) (mem. decision).

¶4 In February 2014, DCS filed a petition for termination of Mother's parental rights to C.H. on the grounds of chronic drug abuse under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3). Mother received and signed a copy of "Form 3 - Notice to Parent in Termination Action," which stated that her failure to attend all future hearings could result in a waiver of legal rights and an admission to the allegations included in the petition for termination. The form also explained that hearings could proceed in Mother's absence, resulting in termination of the parental rights based on the record and evidence presented.

¶5 The juvenile court set a four-day contested severance hearing in late January 2015 to be heard in conjunction with the dependency adjudication and set a pretrial conference for September 12, 2014 at 8:30 a.m. The court's minute entry indicates that Mother again received a copy of Form 3. The morning of September 12, Father called to inform the court that he had taken Mother to the hospital and would be unable to get to the courthouse on time, but refused the court's invitation to appear telephonically. The juvenile court ordered that it would "excuse" the parents' nonappearance if they could provide proof of Mother's hospitalization by the end of business on October 3, 2014. The pretrial conference was continued to November 26, 2014. On October 6, 2014, Mother filed a "Motion to Set Aside Default Finding," which included an attachment titled "Emergency Department Discharge Instructions" ("discharge instructions"). In early November, DCS amended its termination petition, alleging an additional ground for termination pursuant to A.R.S. § 8-533(B)(8)(a) (nine months' out-of-home placement).

¶6 At the November 26 hearing, DCS introduced into evidence a certified copy of Mother's records from the hospital where Mother claimed she sought treatment. The hospital records did not substantiate Mother's claim. Mother testified that she checked into the hospital emergency room at 8:49 a.m. because she was suffering stomach pains. The hospital discharge document Mother filed indicated that she was seen at 8:49 a.m. on September 12 for "abdominal pain [and] stress induced gastritis." Mother explained that she was seen by a nurse practitioner who gave her the discharge instructions and directed her to see her primary care physician. Mother testified that the 74 pages of certified hospital records submitted by DCS were not a complete record of her medical history because, in Mother's estimate, she had "approximately 1000 pages of medical documentation" from that particular facility.

¶7 On cross-examination, Mother stated she had paid cash for her visit but could not produce a receipt. Mother also conceded that the

medical record number on the discharge instructions she submitted to the court was different than the number attributed to her in the certified copies obtained from the hospital. Mother acknowledged that she delivered her discharge instructions to her attorney "very close to the end" of the day on October 3, admitting it did not give her attorney much time to file the document with the court.

¶8 Father testified that on the morning of September 12, he drove Mother to the hospital, returned to their home to call the juvenile court, and drove back to the hospital to retrieve Mother, paying 50 dollars cash for her visit. He explained that he and Mother had been on their way to court when they got stuck in traffic at a railroad crossing and realized they would not make it to court on time. According to Father, Mother's abdominal pain began while they were delayed in traffic, at which point he turned around and drove her to the hospital.

¶9 The juvenile court determined that the parents did not establish good cause for their failure to appear at the pretrial conference, finding that failing to meet the court's October 3 deadline was "reason enough" for the court to proceed in the parents' absence. The court also found that Father's testimony was "clouded" and determined that Mother and Father would have been late for the pretrial conference notwithstanding their eventual trip to the hospital. Thus, the court reasoned that even if Mother and Father had timely filed proof of good cause, the certified hospital records were more credible than the parents' testimony and the uncertified document provided by Mother.

¶10 The juvenile court proceeded with the combined dependency/termination hearing.[3] DCS presented testimony from Katy Zaragoza, the case manager assigned to C.H.'s case,[4] as well as DCS reports and evidence of Mother's April 2014 positive drug test result. Zaragoza, testified that C.H. came into DCS's care in January 2014 because he was born substance-exposed. Regarding DCS's efforts to provide services to Mother, Zaragoza testified that, after Z.H. came into DCS's care in 2012 and through the duration of the case, Mother had been provided with "TASC urinalysis testing, TERROS, a psychological evaluation, a psychiatric evaluation, and parent aide services." Zaragoza opined that, after Z.H. came into care, DCS had made diligent efforts to provide Mother with

---

[3] The court gave Mother and Father the option to remain in the courtroom during termination proceedings and they did so.

[4] Zaragoza was also the case manager for X.H.'s case.

services to address her substance abuse, but testified that Mother had not participated in TERROS substance abuse treatment since she tested positive for methamphetamines at her first intake appointment in June 2012, nor had she participated in urinalysis testing since March 2013. According to Zaragoza, Mother tested positive for methamphetamines in a private hair follicle test as recently as April 2014. Zaragoza further opined that Mother's substance abuse was likely to continue for a prolonged indeterminate period of time because although DCS had provided Mother with services for two years, Mother had been unable to comply with the required services.

¶11    The juvenile court found C.H. dependent as to Mother and Father based on the parents' history of substance abuse and failure to comply with substance abuse services. The juvenile court then granted DCS's petition for termination on both of the alleged grounds, finding that (1) Mother had been provided services since 2012 to address her substance abuse issues but had failed to complete any services and tested positive for methamphetamines in April 2014; and (2) C.H. had been in an out-of-home placement for a period of nine months or longer and DCS made diligent efforts to establish reunification, but Mother had "substantially neglected to change the circumstances" causing C.H. to come into care. The court also determined that termination was in the child's best interests. Mother timely appealed.

## DISCUSSION

### A.    Good Cause Determination

¶12    Mother argues she had good cause for missing the pretrial conference and the juvenile court denied her due process by proceeding in her absence. Mother also argues her attorney was ineffective by filing her hospital discharge instructions three days after the court's deadline.

¶13    The juvenile court may proceed in a parent's absence and terminate parental rights "based on the record and evidence presented" if the parent failed to appear "without good cause," had adequate notice of the hearing, and was admonished that failure to appear could constitute a waiver of parental rights and an admission of the allegations in the petition. A.R.S. § 8–537(C); *see also* Ariz. R.P. Juv. Ct. 64(C). A parent shows good cause for failing to appear by proving "(1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claim exists." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007).

**¶14** This court reviews the juvenile court's finding that a parent failed to appear without good cause for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007). An abuse of discretion occurs when the juvenile court's decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id.* (internal quotation omitted).

**¶15** Mother argues that the juvenile court lacked an "adequate evidentiary basis" to conclude that she lacked good cause for her failure to appear at the pretrial conference. After Father called on the morning of the scheduled conference to inform the court that he and Mother would be unable to attend, the court gave them approximately three weeks to provide proof Mother had been hospitalized. Mother submitted, three days after the deadline, documentation purporting to show that she received treatment in the emergency room the morning of September 12.

**¶16** At the evidentiary hearing, Mother and Father each testified that Mother had gone to the emergency room around 8:30 a.m. on September 12. Father also testified that they were stuck at a railroad crossing and would have been late to the conference even if they had not eventually gone to the hospital. But the certified records DCS had obtained from the hospital did not confirm that Mother visited the emergency room on September 12.

**¶17** The evidence presented to the juvenile court supports the court's determination that Mother did not establish good cause for her failure to appear at the pretrial conference, and this court does not reweigh evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Thus, we find no abuse of discretion.

**¶18** Mother further argues she was denied effective assistance of counsel during the termination proceedings because her counsel failed to timely file the motion to set aside before the juvenile court's October 3 deadline.

**¶19** A parent has a due process right to the effective assistance of counsel in termination proceedings to ensure the fundamental fairness of the proceedings and the reliability of the result. *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 324, ¶ 14 (App. 2007). To establish ineffective assistance of counsel, a party must show both that the attorney's representation fell below prevailing professional norms and that a reasonable probability exists that, but for the attorney's errors, the result of the proceedings would have been different. *Id.* at 325, ¶¶ 17–18.

¶20 Even assuming that Mother's counsel's alleged delay in filing fell below an objective standard of reasonableness, Mother cannot demonstrate a reasonable probability that, but for her counsel's errors, the outcome would have been different. Despite finding that the untimeliness of Mother's filing alone would warrant proceeding in Mother's absence, the juvenile court found that the substance of the documentation provided by Mother did not establish good cause. Because the record indicates that the outcome of the court's good-cause determination would have been no different, Mother has failed to demonstrate that she was prejudiced by counsel's alleged ineffectiveness.

### B. Grounds for Termination

¶21 Mother argues that the evidence presented does not support the juvenile court's finding that she substantially neglected to remedy the circumstances that brought C.H. into DCS care.[5] We review the evidence and draw all reasonable inferences in the light most favorable to upholding the court's factual findings, *Jesus M.*, 203 Ariz. at 282, ¶ 13, and will affirm a court's order terminating a parent's rights unless we conclude that no reasonable person could find the essential elements proven by the prescribed evidentiary standard. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94–95 ¶¶ 6, 9–10 (App. 2009). Finally, if "clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3.

¶22 To terminate parental rights pursuant to A.R.S. § 8-533(B)(8)(a), the juvenile court must find by clear and convincing evidence that (1) the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services; (2) the child has been in an out-of-home placement for a cumulative total period of nine months or longer; and (3) the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement.

---

[5] Mother also challenges the court's finding that DCS made reasonable efforts to reunify the family because she was not afforded sufficient time to reunify with C.H. But Mother does not direct us to any portion of the record showing that she objected in the juvenile court to DCS's efforts. She has thus waived this argument on appeal. *See Shawanee S. v. Ariz. Dept. of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 16 (App. 2014).

¶23　　　　At the time of the termination hearing, C.H. had been in DCS's care for approximately eleven months. Zaragoza testified that C.H. was placed in care after Mother tested positive for methamphetamines shortly after the child was born. Zaragoza further testified that Mother had been offered services since X.H. came into DCS's care in early 2012. Despite being offered services, Mother continued to test positive for methamphetamines.

¶24　　　　We conclude that reasonable evidence supports the juvenile court's findings that DCS made diligent efforts to reunify Mother and C.H. and that Mother failed to remedy the circumstances causing C.H.'s out-of-home placement. The court therefore did not err in ordering termination of Mother's parental rights to C.H. pursuant to A.R.S. § 8-533(B)(8)(a).

### C.　　Best Interests

¶25　　　　Mother also challenges the juvenile court's best interests finding. To establish that termination is in a child's best interests, the court must find that "the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, (App. 1998). Zaragoza testified that C.H. had been in an out-of-home placement for more than nine months, and the placement was meeting his needs and was willing to adopt him. Zaragoza opined that C.H. would benefit from termination because it would enable him to stay in a safe and stable home free of any substance abuse, and any delay in termination would deprive him of permanency and stability. The record supports the court's determination that terminating Mother's parental rights was in C.H.'s best interests.

### CONCLUSION

¶26　　　　We affirm the juvenile court's order terminating Mother's parental rights to C.H.



Ruth A. Willingham · Clerk of the Court
FILED: ama