NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, X.B., *Appellees*.

No. 1 CA-JV 17-0246
FILED 12-28-2017

Appeal from the Superior Court in Maricopa County
No. JD32496
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Paul J. McMurdie and Judge Patricia A. Orozco[1] joined.

---

**S W A N N**, Judge:

¶1          Michael C. ("Father") appeals the juvenile court's order severing his parental rights to X.B.  We affirm because reasonable evidence supports the order.

## FACTS AND PROCEDURAL HISTORY

¶2          Father and Theresa B. ("Mother") are the biological parents of X.B., a male child born on April 12, 2016.  Because X.B. was born substance-exposed, and Father was in jail at the time, the Department of Child Safety ("DCS") took X.B. into care two days after he was born.  Mother's parental rights were severed in a separate proceeding.

¶3          DCS filed a dependency petition shortly after it took X.B. into care, alleging: (1) failure to protect X.B. from Mother's substance abuse; (2) substance abuse; and (3) domestic violence.  DCS offered Father services aimed at reunification, including drug testing through TASC, substance-abuse counseling through TERROS, supervised visitation, individualized counseling, parent-aide services contingent upon 30 days of demonstrated sobriety, a psychological evaluation, and transportation.

¶4          Father's participation in supervised visits was inconsistent, and he missed most of his drug testing.  DCS encouraged Father to stay in Arizona and made him aware that moving would make visits with X.B. more difficult, but he still moved out of the state without notifying DCS in late 2016.  DCS then closed him out of visitation and TASC services.

¶5          In November 2016, DCS filed a motion to terminate Father's rights on three different grounds — abandonment under A.R.S. § 8-533(B)(1), chronic substance abuse under A.R.S. § 8-533(B)(3), and six months' out-of-home placement under A.R.S. § 8-533(B)(8)(b).  Father

---

[1]     The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

returned to Arizona and DCS reopened visitation and TASC services in January 2017, but his participation was again inconsistent. He moved out of state again in February 2017, and in March, the court granted his request for services in Colorado, but he continued to move around the country and did not participate in any out-of-state services. Around that same time, Father was involved in a domestic dispute with Mother in Colorado.

¶6 Father finally returned to Phoenix in May 2017. At that point, he had sporadically participated in visitation and drug testing, and had not participated at all in the other services offered. Father was present for the termination hearing held on May 12, 2017. In its severance order, the court found that DCS had not met its burden of proof for termination based on abandonment or chronic substance abuse, but that it had met its burden for six months' out-of-home placement and that termination was in X.B.'s best interests. The court severed Father's parental rights to X.B., and he timely appeals.[2]

## DISCUSSION

¶7 To sever a parent-child relationship, the juvenile court must find by clear and convincing evidence that at least one of the grounds set forth in A.R.S. § 8-533(B) exists, and must find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). We accept the court's findings of fact unless they are not supported by any reasonable evidence, and we will affirm the severance order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶8 Father's parental rights were severed under A.R.S. § 8-533(B)(8)(b). Under that statute, DCS is required to prove that X.B. was under three years old, had been in an out-of-home placement under court order for a cumulative period of at least six months, and that Father had substantially neglected or willfully refused to remedy the circumstances that caused X.B. to be in out-of-home placement despite DCS's diligent efforts to provide appropriate reunification services.

---

[2] Mother is a member of the Tohono O'odham Nation, and X.B. is thus protected under the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1901–1963. Father only appeals the court's findings and conclusions under A.R.S. § 8-533(B), and not its findings under ICWA.

**¶9**          Father contends that DCS did not prove that he substantially neglected or willfully refused to remedy the circumstances that caused X.B.'s out-of-home placement.[3] We find substantial evidence to support the court's decision. Regarding supervised visitation, DCS encouraged Father to stay in Arizona and made him aware that his constant moving would make visits difficult. DCS first set Father up with supervised visitation in May 2016, but because of his inconsistency, the service was closed three months later. Upon his return to Phoenix in early 2017, DCS again set up supervised visits, but his participation remained inconsistent — his last visit to X.B. was in February 2017.

**¶10**          Father has not remedied his issue with substance abuse. Father participated in only seven drug tests over the 13 months of the case. Though Father tested negative in those seven drug tests, he missed over 20 other required testing. Then, days before the severance hearing, he tested positive for methamphetamine. He testified that the last result was an error, and that he has never abused methamphetamine, but the court could reasonably have found that his testimony lacked credibility.

**¶11**          Aside from the handful of drug testing and supervised visits, Father failed to participate in any reunification services. By his own admission, he never started the drug-abuse counseling program. Father never took advantage of the individualized counseling meant to address his issues with domestic abuse, which was especially relevant given his recent domestic abuse incident with Mother, and he did not complete a psychological evaluation. Accordingly, sufficient evidence supports the court's conclusion that, "[a]t best, Father substantially neglected to participate in services" designed to remedy the issues that caused X.B. to be in an out-of-home placement.

**¶12**          Father also contends that DCS failed to prove that it made diligent efforts to reunite him with X.B. As discussed above, however, DCS offered Father services including TASC, TERROS, supervised visitation, individual counseling, a psychological evaluation, a referral for a parent aide, and transportation. Father argues that the services did not account for his constant moves from state to state for work. But DCS is not required to ensure that a parent participates in each service it offers. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011). Here, when Father left Arizona without notice, DCS still made reasonable efforts to offer

---

[3]          Father does not contest that X.B. is under three years old, that X.B. had been in out-of-home placement for at least six months, or that severance of his parental rights was in X.B.'s best interests.

services in another state, but he failed to participate in those services. When he did return to Arizona, DCS resumed the services listed above, in which Father again substantially neglected to participate. Accordingly, the court's conclusion was supported by sufficient evidence.

¶13 Father finally contends that DCS failed to give him an appropriate amount of time to participate in services. Because Father's contention that the statutorily allotted period is not reasonable is an argument of law, we review it de novo. *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 100, ¶ 9 (App. 2007). In a severance action, the state must balance the rights of the parent to retain rights to the child against the child's need for a stable home within a reasonable time. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). For children under three years old, the Legislature has determined that six months is a reasonable amount of time for a parent to remedy the circumstances that caused the child to be in out-of-home care. *See* A.R.S. § 8-533(B)(8)(b). Here, 13 months had passed from the time X.B. was placed in out-of-home care to the date of the severance hearing. Father's movement from state to state does not excuse his failure to participate in so many of the offered services over that 13 month period. Thus, the court did not err in finding that Father had a reasonable amount of time to remedy the issues listed in the dependency petition.

## CONCLUSION

¶14 For the reasons set forth above, we affirm the juvenile court's order severing Father's parental relationship with X.B.

