IN THE COURT OF APPEALS
STATE OF ARIZONA



FILED BY CLERK

MAY 18 2007

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| ADRIAN E., | ) | |
| | ) | |
| Appellant, | ) | 2 CA-JV 2006-0053 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| ARIZONA DEPARTMENT OF | ) | |
| ECONOMIC SECURITY and | ) | |
| NAINOA E., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. 16861800

Honorable Nanette M. Warner, Judge

AFFIRMED

Belinda B. BreMiller                                                                 Tucson
                                                                Attorney for Appellant

Terry Goddard, Arizona Attorney General
  By Stacy L. Shuman                                                               Mesa
                                                       Attorneys for Appellee Arizona
                                                    Department of Economic Security

Davida Arambula                                                                   Tucson
                                                     Attorney for Appellee Nainoa E.

E C K E R S T R O M, Presiding Judge.

¶1 Appellant Adrian E. appeals from the juvenile court's termination of his parental rights to his son Nainoa E., born August 23, 2003, arguing the court lacked authority to order termination during a status conference he had failed to attend. Adrian also appeals from a subsequent order denying his motion to set aside the termination order. Although we identify inadequacies in the form of notice provided to Adrian—a form designed to alert parents that their failure to appear at court proceedings could constitute waiver of their legal right to contest the termination of their parental rights—we affirm the termination of Adrian's parental rights to Nainoa based on the specific facts of this case.

**Facts and Procedural History**

¶2 Nainoa, a child who suffers from numerous medical conditions, was adjudicated dependent as to Adrian in April 2004. In September 2005, the Arizona Department of Economic Security moved to terminate Adrian's parental rights to Nainoa on the grounds of mental illness or chronic substance abuse pursuant to A.R.S. § 8-533(B)(3), the child's out-of-home placement for nine months or longer pursuant to § 8-533(B)(8)(a), and the child's out-of-home placement for fifteen months or longer pursuant to § 8-533(B)(8)(b).[1] The Department later amended the motion to include as an additional ground pursuant to § 8-533(B)(4) that Adrian had been sentenced to a term of imprisonment of such length that it would deprive Nainoa of a normal home for a period of years. The motion also alleged termination was in Nainoa's best interests.

---

[1]Nainoa's mother's parental rights were terminated in December 2005. In April 2006, a permanent guardianship was established for Nainoa's twin sister, Byanca.

2

**¶3**         After multiple continuances of an anticipated jury trial, the juvenile court held

two status conferences of relevance to the issues presented in this appeal. The first was held

on May 22, 2006. Adrian was present at the hearing and in the custody of the Pima County

Adult Detention Center. During the hearing, the court scheduled a four-day jury trial to

commence on August 22. The court also scheduled a second status conference for August 7.

**¶4**         The May 22 minute entry states that the juvenile court "inform[ed Adrian] of

his rights" and that Adrian signed a "[w]ritten notice of rights" and was provided a copy of

the notice. That document, bearing Adrian's signature, entitled "Notice to Parent in

Termination Action," is consistent with "Form V," a template appended to the Arizona

Rules of Procedure for the Juvenile Court.[2] Adrian does not dispute that the form bearing

his signature lists both the trial dates and the August 7 status conference or that it states:

> You are required to appear for all court hearings. If you cannot attend a court hearing, you must prove to the court that you did not appear for good cause. If you fail to appear without good cause for the Termination Pretrial Conference, Termination Settlement Conference or Termination Adjudication, the court may determine that you have waived your legal rights including the right to trial to a jury, admitted the grounds alleged in the motion/petition for termination and may terminate your parental rights to your child based on the record and evidence presented.

**¶5**         Without explanation, Adrian did not appear on August 7. After confirming

that he had been released from jail on a work furlough, the court proceeded in his absence

---

[2]Form V is no longer in effect. Its nearly verbatim and currently effective counterpart, Form III, contains no differences relevant to this decision.

3

with a "default" adjudication hearing on the motion for termination.[3]  In support of the motion, the Department moved for the admission of seven reports authored by Child Protective Services (CPS) personnel.  Nainoa's counsel did not oppose the admission of the documents and the court admitted them.  Adrian's counsel reminded the court she had previously "file[d] objections to those reports," and the court responded it would not rule on the objections but would follow "general rules."  No further discussion about the reports' admissibility occurred.

¶6        The Department then presented the testimony of CPS case manager Francisco Rendon.  Rendon testified generally that termination was in Nainoa's best interests.  At the conclusion of Rendon's testimony, the juvenile court found the Department had proved three of the alleged grounds for termination: mental illness or chronic substance abuse, nine months' out-of-home placement, and fifteen months' out-of-home placement.  The court also found that termination of Adrian's parental rights was in Nainoa's best interests and directed the Department to submit an order for the court's signature.  The juvenile court did not mention the alleged felony conviction ground, and Adrian's parental rights were not terminated on that basis.

---

[3]When a parent fails to appear without good cause for certain hearings in a termination action, the juvenile court may proceed in the parent's absence with what is commonly referred to as a "default."  In this procedure, the juvenile court may deem a nonappearing parent to have admitted the allegations of the motion for termination of parental rights, but may terminate those rights only if "the record and evidence presented" also support the adjudication.  Ariz. R. P. Juv. Ct. 64(C), 17B A.R.S.; *see also* A.R.S. §§ 8-537(C), 8-863(C).

4

**¶7** On August 24, Adrian moved to set aside the termination order, arguing the juvenile court had lacked authority to proceed by default at a status conference. He alternatively argued he had established good cause for his failure to appear on August 7, citing an affidavit in which he attested, *inter alia*, that he had been unaware of the August 7 hearing because he had not received a copy of the May 22 minute entry his attorney had mailed to him, and his copy of the Notice to Parent showing the August 7 date had likely been lost while he had been en route to the jail after the May 22 hearing. The court denied Adrian's motion and signed the termination order the Department had previously submitted.

## Discussion

### A. Juvenile Court's Authority

**¶8** On appeal, Adrian first contends the juvenile court lacked authority to proceed by default at a status conference and therefore clearly erred in refusing to set aside the order terminating his parental rights. For support, he cites various statutes and rules of procedure and our decision in *Don L. v. Arizona Department of Economic Security*, 193 Ariz. 556, 975 P.2d 146 (App. 1998). In that case, we reversed a termination order "because neither a statute nor a rule [had] authorized the juvenile court to enter a default against the father for failing to appear at a status hearing." *Id.* ¶ 8. Adrian claims that despite subsequent revision of the rules of procedure for the juvenile court, the rules "still do not appear to permit a termination at a status hearing."

**¶9** The interpretation of a court rule presents a question of law that we review de novo. *Merlina v. Jejna*, 208 Ariz. 1, ¶ 7, 90 P.3d 202, 204 (App. 2004). Rule 64(C), Ariz.

5

R. P. Juv. Ct., 17B A.R.S., did not exist when we decided *Don L.* The version of the rule applicable to Adrian provided that a notice of hearing accompanying a motion or petition for termination of parental rights

> shall advise the parent . . . that failure to appear at the initial hearing, pretrial conference, *status conference* or termination adjudication hearing, without good cause, may result in a finding that the parent . . . has waived legal rights, including the right to trial to a jury,[4] and is deemed to have admitted the allegations in the motion or petition for termination. The notice shall advise the parent . . . that the hearings may go forward in the absence of the parent . . . and may result in the termination of parental rights based upon the record and evidence presented.

(Emphasis added.) The plain language of this rule undeniably suggests parental rights may be terminated by default at any of the four types of hearings named in the rule, including status conferences.

¶10 In addition, two other rules specifically prescribe a procedure for addressing a parent's failure to appear at two of the other types of hearings listed in Rule 64(C). The procedure to be followed for initial termination hearings is addressed in Rule 65(C)(6)(c), Ariz. R. P. Juv. Ct., 17B A.R.S. A virtually identical procedure for termination adjudication hearings is prescribed by Rule 66(D)(2), Ariz. R. P. Juv. Ct., 17B A.R.S. The procedures set forth in these rules closely mimic the cautionary language used in Rule 64(C) authorizing the court to deem a parent's failure to appear as a waiver of rights and admission of

---

[4]A statute previously granting a right to a jury trial upon demand by a parent facing termination of his or her parental rights has been repealed. *See* 2003 Ariz. Sess. Laws 2d Spec. Sess., ch. 6, § 45 (repealing A.R.S. § 8-223, effective Jan. 1, 2007). Rule 64(C) has been amended to reflect this legislative change.

6

allegations and to enter a termination adjudication order based upon the record and evidence presented. *See* Ariz. R. P. Juv. Ct. 65(C)(6)(c), 66(D)(2).

¶11 Adrian acknowledges these rules, but claims that despite Rule 64(C)'s directive to advise parents the court may proceed to a termination hearing at a status conference in their absence, only Rules 65 and 66 confer authority on the juvenile court to actually enter such "default" termination orders. Adrian then reasons that the juvenile court's authority to enter default judgments is confined only to the two types of hearings addressed by Rules 65 and 66. Because a status conference is not among them, he concludes the juvenile court lacked authority to proceed in his absence during the August 7 status conference.

¶12 We disagree. Rule 64(C) plainly requires a parent to be notified at the time he or she is served with a termination motion that the failure to appear for a status conference could result in termination of parental rights, and Adrian was properly served, through counsel, with such notice in September 2005. *See* A.R.S. § 8-863(A). Our reluctance to interpret a rule or statute in a manner that renders any part of it superfluous, *see In re Maricopa County No. MH 2001-001139*, 203 Ariz. 351, ¶ 17, 54 P.3d 380, 383 (App. 2002), leads us to the only logically available conclusion: Rule 64(C) implicitly authorizes the juvenile court, in accordance with the procedure described in Rules 65(C)(6)(c) and 66(D)(2), to terminate the parental rights of a parent who, like Adrian, fails to appear without good cause for a status conference on a pending motion for termination.

*See also Merlina*, 208 Ariz. 1, ¶ 7, 90 P.3d at 204 (same rules of construction apply for court rules as for statutes).

**¶13**    The Department also cites A.R.S. § 8-537(C) as statutory authority for the juvenile court to proceed by default.  That statute does state, in relevant part, "[i]f a parent does not appear at the . . . status conference," the court may proceed in the parent's absence if other criteria are also met.  *Id.*  However, § 8-537(C) falls within article 2, chapter 5 of title 8 (A.R.S. §§ 8-531 through 8-544).  The Department did not initiate the termination proceedings involving Nainoa by filing a termination petition under article 2 of chapter 5.  Instead, the termination proceedings were initiated by the Department's filing a termination motion in an ongoing dependency proceeding pursuant to article 4 of chapter 10 (A.R.S. §§ 8-861 through 8-864).  And § 8-532(C) specifically states, with an exception not relevant here, that "article [2 of chapter 5] does not apply to termination proceedings conducted pursuant to chapter 10, article 4 of this title."  Thus, § 8-537(C) is not applicable to the parental termination proceeding initiated by motion here.

**¶14**    Accordingly, we disagree with the Department that § 8-537(C) provided statutory authority for the juvenile court to proceed as it did here.[5]  But Adrian does not

---

[5]We are aware other appellate decisions have applied various statutory provisions of article 2 of chapter 5 without discussion in cases in which the termination proceedings were or may have been conducted under chapter 10, article 4.  *See, e.g., Kelly R. v. Ariz. Dep't of Econ. Sec.*, 213 Ariz. 17, ¶ 28, 137 P.3d 973, 978 (App. 2006) (addressing criteria for appointment of guardian ad litem under A.R.S. § 8-535(F)); *Kenneth T. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 150, ¶ 24, 128 P.3d 773, 777 (App. 2006) (§ 8-537 does not prohibit entry of summary judgment in termination proceedings); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4, 53 P.3d 203, 205 (App. 2002) (clear and convincing standard of proof required by § 8-537(B)).

contend that the supreme court improperly exercised its rule-making authority when it adopted Rule 64(C), a provision that unambiguously extends the authority of the juvenile court to proceed by default in termination proceedings initiated by motion.[6] Because Rule 64(C) independently authorized the juvenile court to proceed by default at the August 7 status hearing, the court correctly rejected Adrian's claim that it had exceeded its authority in doing so.

**B. Good Cause**

¶15 Adrian next contends, as he did below, that the juvenile court was required to set aside the termination order because he had established good cause for his failure to appear on August 7. "[A] finding of good cause for a failure to appear is largely discretionary." *John C. v. Sargeant*, 208 Ariz. 44, ¶ 13, 90 P.3d 781, 784 (App. 2004). We therefore review the finding for an abuse of discretion and generally will reverse only if the juvenile court's exercise of that discretion was "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, ¶ 19, 107 P.3d 923, 929 (App. 2005), *quoting Quigley v. Tucson City Court*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App. 1982).

¶16 In his motion and supporting affidavit, Adrian essentially claimed it was reasonable for him to have: (1) lost the Notice to Parent, which he could not remember

---

[6]We do not imply a complete absence of statutory authority for the juvenile court to proceed by default in termination actions conducted under chapter 10, article 4. To the contrary, A.R.S. § 8-863(C) provides such authority. However, that statute was not relied upon by any of the parties here, nor does it address the entry of default judgments at status conferences, the specific issue presented.

having received; (2) recalled only the dates set for trial; and (3) become "confus[ed]" by the number of hearings that had been held. In addressing Adrian's contentions, we acknowledge that the notice Adrian received on May 22, the last notice he received before failing to appear on August 7, was misleading and confusing. That notice did not advise Adrian that his failure to appear at a *status conference* could result in termination of his parental rights. Instead, in conformity with Form V's (and current Form III's) suggested text, it referred only to a pretrial conference, settlement conference, or adjudication hearing. We find inexplicable the form's inconsistency with Rule 64(C), the latter of which *includes* status conferences but *does not* refer to settlement conferences as among those hearings at which parental rights may be terminated by default. Conceivably, the notice's erroneous itemization of those hearings might mislead or confuse a parent—even one who has earlier received more accurate warnings or admonishments about the consequences of a failure to appear at a status conference.

¶17        We therefore urge our juvenile courts to utilize a notice that conforms with Rule 64(C) in part because of the emphasis that notice receives in the courtroom. Parents are asked to sign the notice and are provided a copy of it. That useful process conveys to the parent the importance of attending the itemized hearings, assists the parent in remembering the upcoming court dates, and memorializes that the parent has received the notice. But if the notice contains incorrect or misleading information, that process only increases the risk that parents will rely upon any inaccuracies to their detriment.

10

¶18 Moreover, the juvenile court apparently filled out a portion of the form in a fashion that could confuse parents. The form Adrian signed on May 22 shows the next hearing type as "trial/status conference." Then, in handwriting following the word "Date," the notice shows "8/22, 23, 24, 25," the dates set for trial. *Below* that, in white space reserved above the signature line, additional handwriting states "8/7/06 at 1:30 status conference." Adrian's claim—that he "had committed the trial dates to memory as being the next time [he] needed to appear"—is consistent with the confusing, nonchronological order in which the dates of Adrian's future hearings are itemized under the category "Next hearing type." We thus discourage the practice of showing the dates of the "[n]ext hearing(s)" in anything other than chronological order.

¶19 However, the importance of these inconsistencies and potentially confusing attributes of the notice is greatly diminished under the specific facts of this case because Adrian ultimately contended that he had lost the notice altogether or perhaps had never actually received a copy of it. Moreover, Adrian's motion to set aside the termination order and accompanying affidavit did *not* establish that he had lacked actual notice of the hearing or the consequences of his failure to appear at it. The record, by contrast, shows he had received both. Throughout the dependency and termination proceedings, the court repeatedly admonished Adrian that his failure to attend "future hearings" could result in termination of his parental rights. Indeed, his children previously had been adjudicated dependent as to him by default when he had failed to appear at a status hearing. Accordingly, Adrian's claims about the adequacy of the notice he received and the

11

reasonableness of his calendaring error raised substantial questions of fact and credibility for the juvenile court to resolve.

¶20 The court did so in September 2006, after a hearing on Adrian's motion to set aside the default. Adrian testified at the hearing, was cross-examined by counsel for the Department, and was further questioned by the court. The court then denied the motion "[f]or the reasons set forth on the record." Unfortunately, a transcript of the hearing is not included in the record on appeal. And, as Adrian correctly implies, its absence appears to have resulted from an error on the part of the superior court clerk.[7]

¶21 Adrian insists in his reply brief, however, that the transcript is not "essential to deciding the issues presented" and that "the minute entries and the parties' pleadings set forth a sufficient record of the case to render a decision." We generally presume items that are necessary for our consideration of the issues but not included in the record support the court's findings and conclusions. *See Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995). Our reticence to reverse a juvenile court's discretionary ruling, particularly one that finds support in the available record, is only amplified when an appellant insists we

---

[7]Adrian stated in his notice of appeal that he was appealing from the "denial of his Motion to Set Aside Default and the form of Order entered on or around the 25th day of September terminating his parental rights." Under the applicable version of Rule 89(C)(1), Ariz. R. P. Juv. Ct., 17B A.R.S., the clerk of the superior court was required to serve a copy of the notice "on each court reporter who reported any juvenile court proceeding that [wa]s part of the transcript as defined by [Rule 89](D)(2)." Because the hearing on Adrian's motion was one "that generated the order being appealed," Rule 89(D)(2)(d), the clerk should have notified the court reporter, and the transcript should have been included in the record on appeal. Ariz. R. P. Juv. Ct. 89(D)(1). The clerk's letter of October 5, 2006, shows this was not done.

12

need not be privy to the court's reasoning or all of the evidence upon which its decision was based. Accordingly, although we urge our juvenile courts to generate form notices that accurately and clearly describe the hearings that parents must attend on penalty of forfeiting their rights, we can find no abuse of discretion in the juvenile court's specific denial of Adrian's motion to set aside the termination order.

## C. Admissibility and Sufficiency of the Evidence

**¶22** Finally, Adrian claims the juvenile court lacked sufficient evidence upon which to base its findings that grounds for termination existed. He contends six of the seven documentary exhibits admitted into evidence over his objection were not properly admitted. He further contends the exhibits themselves, coupled with Rendon's testimony, did not provide sufficient evidence to support the juvenile court's findings. The Department counters that Adrian abandoned these arguments by failing to sufficiently develop them on appeal. We find any possible error in the court's evidentiary rulings was either harmless or waived and the evidence supports the court's findings.

**¶23** At the August 7 hearing, after the Department had moved to admit Exhibits One through Seven, the court and Adrian's counsel had the following exchange:

> MS. BREMILLER: I did file objections to those reports, Your Honor.
>
> THE COURT: For the purpose of jury trial that would be a different issue, not for purpose of a court hearing. The Cou[rt] would rule on each of those. The Court has general rules it follows.
>
> MS. BREMILLER: Okay.

13

Although the court's ruling on the theory of admissibility of the documents is unclear, Exhibits One through Six had been previously admitted during various dependency hearings. Consequently, each of those exhibits was a part of the record the juvenile court could consider in conducting a default hearing. *See* Ariz. R. P. Juv. Ct. 64(C) (requiring notice to parent that court can proceed with adjudication of termination "based upon *the record and evidence presented*" if parent fails to appear without good cause) (emphasis added); *see also* Ariz. R. P. Juv. Ct. 65(C)(6)(c), 66(D)(2). Therefore, irrespective of their independent admissibility on August 7, the juvenile court properly considered Exhibits One through Six.

¶24 Adrian waived any objection to Exhibit Seven. That document, a report authored by Rendon in February 2006, was not a subject of the written objections of which Adrian's counsel reminded the court on August 7. Adrian did not separately object to its admission below, nor does he appear to challenge its admission on appeal. As a result, all of the exhibits were either a part of the record or admitted into evidence without objection, and the juvenile court did not err in considering them.

¶25 Adrian contends, however, that the evidence nevertheless was insufficient to support the court's conclusions that grounds for termination existed because the Department's earlier motion for summary judgment had been unsuccessful. According to Adrian, it "defies common sense" that "the same information, not presented by the State in affidavit form" could constitute "clear and convincing evidence in support of the termination of [his] parental rights." We reject this argument because it conflates a determinative question for summary judgment—whether the evidence presents genuine issues of material

14

fact—with a determinative question for adjudication—whether, based on the evidence, the trier of fact should resolve those issues in the movant's favor. In this appeal, we are concerned only with the latter of these, and we will affirm if any reasonable evidence supports a juvenile court's findings. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 4, 53 P.3d 203, 205 (App. 2002).

**¶26**        Adrian, however, fails to explain how the record and evidence presented fell short of establishing that at least one alleged ground for termination of his parental rights existed, particularly in light of the fact that he was deemed to have admitted the allegations contained in the motion for termination. We have reviewed the record and found ample evidence from which the juvenile court could conclude that the Department made a diligent effort to provide appropriate reunification services, that Nainoa remained in an out-of-home placement for more than nine months, that Adrian substantially neglected or willfully refused to remedy the circumstances causing Nainoa to remain in such a placement, and that termination of Adrian's parental rights was in Nainoa's best interests. Accordingly, the juvenile court properly found a statutory ground for termination under § 8-533(B)(8)(a) had been established. Having reached this conclusion, we need not consider the remaining grounds upon which Adrian's parental rights were terminated. *See Pima County Severance Action No. S-110*, 27 Ariz. App. 553, 554, 556 P.2d 1156, 1157 (1976) (when evidence supports one ground for termination, appellate court need not consider other grounds).

**Conclusion**

¶27 We affirm the juvenile court's orders terminating Adrian's parental rights to Nainoa and denying the motion to set aside that judgment.

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

_____
PHILIP G. ESPINOSA, Judge