NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRITTANY R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, X.R., E.R., I.R., *Appellees*.

No. 1 CA-JV 18-0411
FILED 5-21-2019

Appeal from the Superior Court in Maricopa County
No. JD23594
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**C R U Z**, Judge:

**¶1**        Brittany R. ("Mother") appeals the juvenile court's order denying her motion to set aside the court's finding that she lacked good cause for failing to appear at her initial severance hearing. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In January 2017, the Department of Child Safety ("DCS") removed X.R., E.R., and I.R. (the "children") from Mother's care after Mother admitted methamphetamine use; and DCS offered reunification services. That month, Mother signed Form I, "Notice to Parent in Dependency Action," requiring her to attend all court hearings and that the failure to appear could result in a finding that Mother waived her legal rights, admitted the allegations in the motion and the court could proceed based on the record presented.

**¶3**        In February 2017, the court adjudicated the children dependent as to Mother based on allegations of Mother's substance abuse and approved a family reunification case plan. In December 2017, Mother signed Form III, "Notice to Parent in Termination Action," which states that Mother was to attend all hearings and failure could result in waiver of legal rights and admission of the allegations included in the motion for termination. The form also explained that the hearing could proceed in Mother's absence, resulting in termination of parental rights based on the record and evidence presented.

**¶4**        After Mother demonstrated sobriety, DCS returned the children to Mother's care in May 2018. The juvenile court, however, did not dismiss the dependency action and in June 2018, Mother failed to attend a dependency review hearing. Mother relapsed in June 2018 and DCS once again removed the children from Mother's custody in July 2018. The relapse was confirmed by Mother's hair follicle tests, which were positive for methamphetamine in June and July 2018.

¶5            In August 2018, Mother again failed to appear for a dependency review hearing, where the juvenile court changed the case plan to severance and adoption.  Later that month, DCS moved to terminate mother's parental rights on the grounds that her history of chronic substance abuse rendered her unable to discharge her parental responsibilities, Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3), and that the duration of the children's cumulative time in an out-of-home placement had exceeded fifteen months with a substantial likelihood that Mother would not be able to parent in the near future, A.R.S. § 8-533(B)(8)(c).  The juvenile court set the initial severance hearing for September 18, 2018, and Mother received timely notice by mail, which the juvenile court later confirmed at the initial severance hearing, without objection from Mother's attorney.

¶6            During July and August 2018, Mother exchanged emails with her DCS case manager explaining she was actively, but unsuccessfully, seeking inpatient substance abuse treatment at Crossroads.  Mother's last email on August 28, 2018 stated, "you will be on the ROI [Release of Information] so that [you] can call [and] make sure that [I] am there."  The emails also reflect that Mother knew she would have limited access to a telephone.

¶7            Mother failed to appear at the September 18 initial severance hearing, and her attorney provided no excuse for her absence.  The juvenile court found service was complete, and that Mother failed to appear at the hearing without good cause.  The juvenile court granted DCS's request to proceed to termination immediately.  DCS presented evidence to justify severance, and the juvenile court issued Findings of Fact and Conclusions of Law terminating Mother's parental rights.

¶8            In October 2018, Mother filed a motion to set aside the juvenile court's finding that she failed to appear without good cause.  Mother contended there was good cause for her failure to appear because at the time of the hearing she was a patient at Crossroads rehabilitation facility.  An email from a Crossroads employee attached to the motion stated that Mother had been a resident at Crossroads since September 10, 2018, at which time she tested positive for "Meth and Benzos."  The email further stated that Mother and Crossroads staff attempted to contact DCS numerous times, and DCS failed to respond.

¶9            In response, DCS stated the last contact DCS received from Mother was a September 10, 2018 voicemail, explaining Mother was trying to get accepted at Crossroads but had not yet been accepted.  However,

when DCS contacted Crossroads, they refused to confirm whether Mother was in their program. The next time DCS received any contact from Crossroads or Mother was after the severance hearing, on October 3, 2018.

¶10 The superior court heard argument on Mother's motion to set aside the severance orders. Counsel for DCS informed the court that after the case manager's last exchange with Mother, the case manager went to Mother's last known address and contacted Crossroads, but the facility would not confirm whether Mother was a patient there. The juvenile court denied Mother's motion. Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(2).

## DISCUSSION

¶11 Mother argues that the juvenile court erred in denying her motion to set aside the court's termination order, contending that she had good cause for her failure to appear at the initial termination hearing. We disagree.

¶12 When a parent has failed to appear at an initial severance hearing without good cause, and the court finds the parent had proper notice and was previously admonished as to the consequences of failing to appear, Arizona Rule of Procedure for the Juvenile Court 65(C)(6)(c) allows a court to find the parent waived her right to contest the allegations on the motion for termination, deem the parent to have admitted the statutory basis for severance, and "proceed with the adjudication of termination based upon the record and evidence presented." *See also* A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 64(C).

¶13 To show good cause to set aside a termination order arising out of a scheduled initial severance hearing, a parent must only prove mistake, inadvertence, surprise, or excusable neglect. *Trisha A. v. Dep't of Child Safety*, 245 Ariz. 24, 31-32, ¶¶ 17, 22 (App. 2018). A finding of good cause for failure to appear is largely discretionary. *John C. v. Sargeant ex rel Maricopa Cty.*, 208 Ariz. 44, 47, ¶ 13 (App. 2004), *superseded on other grounds as recognized by Ariz. Dep't of Econ. Sec. v. Reinstein*, 214 Ariz. 209 (App. 2007). "Excusable neglect exists if the neglect or inadvertence is such as might be the act of a reasonably prudent person in the same circumstances." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007) (internal quotations and citation omitted).

¶14 We review a finding that a parent lacked good cause for her failure to appear, and the court's decision on a motion to set aside judgment, for an abuse of discretion. *See Adrian E. v. Ariz. Dep't of Econ.*

*Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007); *Christy A.*, 217 Ariz. at 303, ¶ 12 (addressing a motion to set aside). We will reverse a finding that a parent lacked good cause for failing to appear only if the juvenile court's exercise of discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Adrian E.*, 215 Ariz. at 101, ¶ 15 (citations and quotation omitted).

**¶15** Mother does not deny receiving notice of the September 18 hearing, as well as notice that her failure to appear for scheduled hearings could result in the waiver of certain legal rights and an admission of DCS's allegations. She instead argues there was good cause for her failure to appear.

**¶16** We find no error in the juvenile court's finding that Mother failed to demonstrate good cause for her absence from the initial severance hearing. Despite having adequate notice of the exact date and time of the hearing, she made no effort to contact her counsel or the court. Although she asserts that Crossroads staff attempted to contact DCS, she cites no evidence suggesting her residence at Crossroads was an insurmountable barrier to contacting the court before September 18. To the contrary, Crossroads' October 11, 2018 email reveals Mother left Crossroads without permission on October 10, 2018, purportedly to go to the DCS office. Further, Mother's emails to her DCS case manager acknowledge that she knew she would have limited access to telephones and that she needed to sign a Release of Information for DCS to confirm she was a Crossroads patient. However, when Mother's case manager contacted Crossroads to confirm Mother was a patient there, the facility refused to provide any information. Mother does not argue she ever signed the ROI authorizing DCS to obtain information from Crossroads as planned.[1] Therefore, the court could reasonably conclude that, entering treatment and failing to sign the ROI, Mother thwarted DCS's efforts to communicate with Mother or to verify her status as a Crossroads patient at the time of the hearing. On this record, we cannot say that the juvenile court abused its discretion. Mother's conduct was not that of a reasonably prudent person facing termination of her parental rights. Accordingly, the superior court did not err.

---

[1] In an email dated November 7, 2018, DCS references an October 3, 2018 voicemail wherein a Crossroads representative inquired about future court dates and informed DCS that Crossroads had an ROI which allowed it to receive information about Mother's court case. Even if this ROI existed, it would not necessarily permit Crossroads to release information about Mother to third parties.

**CONCLUSION**

¶17 Mother does not challenge the juvenile court's findings in support of severance, and because we find no error in the determination that she failed to appear without good cause, we affirm the order terminating Mother's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED: AA