NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

BRANDI K., DAVID C., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.C., *Appellees*.

No. 1 CA-JV 21-0023
FILED 7-8-2021

---

Appeal from the Superior Court in Maricopa County
No.  JD 532153
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant, Brandi K.*

John L. Popilek, Scottsdale
*Counsel for Appellant, David C.*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1 Brandi K. ("Mother") and David C. ("Father") appeal the termination of their parental rights to their son, D.C., born in November 2018. For the following reasons, we affirm.

## BACKGROUND

¶2 The Department of Child Safety ("DCS") learned about D.C. when Mother tested positive for amphetamines at his birth. DCS took temporary custody of D.C. and petitioned the juvenile court to find him dependent as to Mother and Father on grounds of substance abuse, lack of housing, and unemployment. The parents did not contest the dependency. Mother admitted she had a history of substance abuse, including using methamphetamine two weeks before D.C.'s birth. During the dependency case she missed several tests, but always tested negative. Around January 2020, DCS helped the parents acquire a housing voucher, but they chose to move into a sober living facility.

¶3 In March 2020, DCS moved for termination of their parental rights, citing grounds of prolonged substance abuse, six months' time-in-care, and fifteen months' time-in-care. A.R.S. § 8-533(B)(3), (8)(b–c). The termination hearing was originally scheduled for September 24, 2020, but was continued when the court granted DCS's motion to continue, filed three days before the hearing.

¶4 Father did not appear at the telephonic termination hearing set for January 5, 2021. His counsel told the court:

> I didn't learn that my client was in treatment until I tried to get ahold of him just the other day. The person I spoke to . . . told me that she would get a message to him . . . and I never have heard from him. So, he's not here today because he is in treatment. . . . I'm requesting that we continue as to my client.

DCS objected to the continuance, and the court denied the motion, stating there was no evidence Father was incapable of calling in.

¶5            The DCS case manager, Colleen Teague, acknowledged Mother's accomplishments in achieving sobriety and completing services, as well as consistent visitation with D.C.  However, Teague expressed two remaining concerns: (1) Mother was still in a relationship with Father, who had not demonstrated sobriety; and (2) she still resided in the sober living facility, which DCS did not consider to be stable housing for D.C.  Teague explained that Mother lacked financial stability, and she expressed concern whether she could maintain sobriety outside of a controlled environment. As to Father, Teague noted his history of substance abuse, explaining he tested positive over 20 times for marijuana, opiates, methamphetamines, and amphetamines between September 2019 and May 2020.

¶6            Mother claimed she had been sober since her last positive test in December 2018, though DCS noted it could only document eight months of sobriety. After several unsuccessful attempts, Mother completed substance abuse treatment in August 2020.  Throughout the dependency case, Mother lived and worked at the sober living facility, where she received payment in the form of a credit toward her rent.  She testified she had kicked Father out of the facility in December 2020 after a relapse. Addressing Father's failure to appear, Mother said he had been in treatment since December 19, following his relapse, and he was currently at an inpatient treatment center.  She admitted she had not informed DCS of his status, and when asked whether she had told Father to call into the hearing, she replied:  "He was in class today."

¶7            The juvenile court issued a comprehensive ruling terminating Mother's and Father's parental rights.  First, the court found Father lacked good cause for his failure to appear, which was treated as a waiver of his rights and an admission of the allegations.  It noted no evidence showed Father could not have attended the trial while participating in rehabilitative services.  Second, the court found DCS had proven all three grounds for termination as to Father, citing his long history of substance abuse, failure to participate in services, and lack of stability.  Third, the court found DCS had proven the fifteen months' time-in-care ground as to Mother, citing her relationship with Father and her continued residence at the sober living facility.  Finally, the court found termination was in D.C.'s best interests because he was adoptable and the parents had failed to make the necessary behavioral changes.  Mother and Father separately appealed the court's ruling.

## DISCUSSION

### A.    Mother's Appeal

**¶8**        To terminate parental rights, the juvenile court must find (1) one of the statutory grounds articulated in A.R.S. § 8–533(B), by clear and convincing evidence; and (2) that termination is in the child's best interests, by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We view the evidence in the light most favorable to sustaining the court's ruling and will affirm if supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We do not reweigh the evidence presented because "the resolution of conflicting evidence is 'uniquely the province of the juvenile court' . . . even when 'sharply disputed' facts exist." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citations omitted).

### 1.    Statutory Ground

**¶9**        When seeking termination based on out-of-home placement for a cumulative period of fifteen months or longer, DCS must prove (1) it made diligent efforts to provide appropriate reunification services, (2) the child was in an out-of-home placement for at least fifteen months, (3) Mother was unable to remedy the circumstances that caused D.C. to be in such placement, and (4) a substantial likelihood existed that Mother would not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c). Mother argues the court lacked reasonable evidence to find she failed to remedy the circumstances leading to D.C.'s placement and could not parent D.C. in the near future.

**¶10**        The juvenile court found that Mother was unable to remedy the circumstances leading to D.C.'s placement, including the "instability that is attendant with substance abuse." The court noted that Mother remained with and ultimately married Father in 2020, despite his continuing struggle with substance abuse and her awareness that she would be held to his level of progress. The court found that Mother "fail[ed] to recognize the threat that Father's substance abuse poses to [D.C.]" and she continued to reside in the sober living home, rather than trying to secure housing. The court stated the facility was "not a proper environment for a young child" due to the "continuous turnover" of the residents and possible exposure to substance abuse.

**¶11**        Second, the court found that Mother would be unable to parent D.C. in the near future, questioning the permanence of her newfound sobriety. The court explained that Mother had not yet

demonstrated sobriety outside of the structured environment of the sober living facility and had no plans to move out. The court reiterated its concerns about Mother's relationship with Father, and it noted Mother had been unemployed for over ten years.

¶12 Mother argues she could remain in the sober living facility and DCS did not make a showing that D.C. would not be allowed to live there. But DCS presented evidence the facility would not be appropriate housing for a child, even if children are allowed to live there. Teague testified that DCS had concerns about transient individuals moving in and out of the facility and the child's possible exposure to substance abuse. She also explained that DCS does not consider the facility to be "stable housing," which usually means the parent has their name on a lease.

¶13 In addition, Mother contends her willingness to expel Father from the sober living facility after he relapsed shows she can protect D.C. from Father's substance abuse. But DCS presented evidence to the contrary. Teague testified that Mother had been informed she would be held to Father's level of progress so long as they were a couple and living together. Teague explained her concerns about Mother's ability to maintain her sobriety if exposed to Father's substance abuse, and opined that Mother does not understand the impact of Father's substance abuse on D.C. Because we do not reweigh the evidence on appeal, *Alma S.*, 245 Ariz. at 151, ¶ 18, reasonable evidence supports termination based on fifteen months' time-in-care.

### 2. Best Interests

¶14 "Termination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Id.* at 150, ¶ 13. "[W]hen a current placement meets the child's needs, and the child's prospective adoption is otherwise legally possible and likely," a court may find termination of parental rights is in the child's best interests. *Id.* at 151, ¶ 14 (quotation and citation omitted). The court considers the "totality of the circumstances existing at the time of the severance." *Id.* at 150, ¶ 13.

¶15 Mother argues that DCS failed to describe the benefit or detriment of termination under the totality of the circumstances. We disagree.

¶16 Teague testified that D.C. is currently placed in a licensed foster home that is meeting his needs, and that if "for some reason this

placement falls through," D.C. is "otherwise adoptable." Teague also opined that D.C. would be harmed if he reunified with his parents because they have no home to which D.C. could return, Mother's current environment would potentially subject him to substance abuse, and he would have no financial security. And the juvenile court expressly stated it considered the "totality of the circumstances," including Mother's efforts towards reunification and her bond with D.C. It explained D.C. would benefit from severance because he is in an adoptive placement and requires permanency. The court also found that D.C. would be harmed if it denied severance because his parents had not made the necessary behavioral changes and he would be living in an unstable environment. Because reasonable evidence supports these findings, the court did not err in finding that termination was in D.C.'s best interests.

### B. Father's Appeal

**¶17** Father argues the juvenile court erred by (1) finding he lacked good cause for missing the termination hearing and (2) denying his request for a continuance. He does not contest the grounds for termination. We review a court's finding of whether good cause exists for failure to appear for an abuse of discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007). We will reverse only if the ruling was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id*. We review the grant or denial of a continuance for an abuse of discretion. *In re MH2003-000240*, 206 Ariz. 367, 369, ¶ 10 (App. 2003).

**¶18** Here, the juvenile court found that Father's failure to appear at the termination hearing was without good cause. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. 66(D)(2). To prove otherwise, Father was required to show that "(1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claims exists." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007); *see also Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 89, ¶ 19 (2019). Father has not argued his failure to appear was a mistake, a surprise, or inadvertent. In addition, he has not argued excusable neglect or a meritorious defense to the motion for termination. Thus, the court did not abuse its discretion.

**¶19** Even assuming Father has implicitly asserted such matters by stating he failed to attend the hearing because he was in an inpatient treatment program for his substance abuse, the court acted within its discretion in finding Father's absence was without good cause. Father does not argue he lacked notice of the hearing or claim he did not know his failure to appear could result in termination. As DCS notes, Father did not

claim he was unable to attend the termination hearing telephonically, and he had called into all prior hearings going back to March 2020. Father suggests that many inpatient facilities do not permit outgoing calls, but he does not argue or present evidence he was prohibited from doing so.

¶20        Father also argues the juvenile court abused its discretion in denying his request to continue the hearing, especially because the court had previously granted a continuance for DCS. A parent may request to continue a termination hearing if the request is "in writing" and "state[s] with specificity the reasons for the continuance." Ariz. R.P. Juv. Ct. 46(A), (F). The court will grant the motion upon a showing of good cause and will consider the child's best interests. *Id*.; *James A. v. Dep't of Child Safety*, 244 Ariz. 319, 322, ¶ 14 (App. 2018). Father waited until the hearing to request a continuance. By contrast, DCS requested a continuance before the earlier hearing, explained why it was necessary, and noted that none of the other parties objected. Given the stark differences between the two motions, the court did not abuse its discretion in denying Father's request for continuance.

## CONCLUSION

¶21        Because neither parent has shown the juvenile court erred in terminating their parental rights, we affirm.

