NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO G.R.

No. 1 CA-JV 23-0142

FILED 03-20-2025

---

Appeal from the Superior Court in Maricopa County
No. JD38309
The Honorable Melody Harmon, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Office of the Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Emily W.*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee DCS*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child*

———————————————

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge Randall M. Howe joined.

———————————————

**J A C O B S**, Judge:

¶1          Emily W. ("Mother") appeals an order denying her motion to set aside the termination of her parental rights as to her child, G.R.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A.     DCS Takes Temporary Custody of the Newborn G.R.

¶2          G.R. was born on June 18, 2021, and is the child of Mother and Victor R. ("Father"), who is not a party to this appeal.  Due to Mother's daily drug use during pregnancy, G.R. tested positive for fentanyl, amphetamines, and methamphetamines at birth and remained hospitalized for over a month with withdrawal symptoms.  Because Father also regularly used drugs after G.R.'s birth, the Department of Child Services ("DCS") took temporary physical custody of G.R. and placed her with her maternal grandmother.  G.R. was later placed with her maternal aunt and uncle in January 2022, where she remained during these proceedings.

### B.     Mother and Father Do Not Contest G.R.'s Dependency and Receive Services.

¶3          In August 2021, DCS filed a dependency petition alleging Mother and Father were unable to parent.  Mother and Father did not contest the petition.  The court found G.R. dependent based on Mother's substance abuse and unstable housing as well as Father's abandonment and failure to provide basic necessities.  The court referred Mother and Father for drug testing, drug treatment, supervised visitation, parent aide services, and transportation services.

¶4          For the next two years, Mother sporadically engaged in services, frequently causing providers to close her referrals for lack of engagement or participation.  Mother was referred to Terros for substance abuse treatment at least five times, and every time her account was closed

for not attending. Similarly, she was referred to the Nurturing Parenting Program ("NPP") three times, but her account was closed each time for not substantially participating. Mother frequently missed drug tests and consistently tested positive for methamphetamines and fentanyl on the tests she did attend, although she claimed to be in and out of rehab during this period. Mother also consistently missed or arrived late to supervised visitation appointments.

**C.     The Juvenile Court Holds a Hearing and Grants DCS's Motion to Terminate Mother's and Father's Parental Rights.**

¶5          In November 2022, DCS moved to terminate Mother's and Father's parental rights based on both parents' substance abuse and G.R.'s 15-month out-of-home placement. The juvenile court held a hearing on the motion, during which Mother and Father pled no contest. G.R.'s case manager, Maria Boozhanof, testified that Mother and Father continued to struggle with substance abuse and were not able to successfully complete treatment, despite DCS's repeated referrals. The court granted the termination motion on June 20, 2023, finding termination to be in G.R.'s best interest because it would allow her to become adopted. Father appealed the termination order, but Mother did not.

**D.     DCS Notifies Mother of Deficiencies in Its Document Disclosure, After Which Mother Unsuccessfully Moves to Set Aside the Termination Order.**

¶6          A few months later, DCS determined it had failed to disclose several documents to Mother and Father before trial. Its document management system (known by the name Guardian) experienced a systemic error in disclosure that affected juvenile cases broadly. This Court stayed Father's appeal, and appointed counsel for both Mother and Father to assess the impact of the late-disclosed documents.

¶7          Mother obtained the late-disclosed documents on October 5, 2023—three-and-a-half months after the court terminated Mother's rights. They included: (1) a four-page supervised visitation discharge summary report dated January 5, 2023 to July 6, 2023; (2) a five-page NPP service closure summary dated June 13, 2023; (3) a three-page Sage Counseling closure summary dated June 16, 2022; (4) a five-page Family Nurturing Plan dated January 11, 2022 to July 8, 2022; (5) a sixteen-page DCS home safety checklist for kinship placement dated November 29, 2021; (6) a ten-page kinship foster care or significant person placement assessment dated November 30, 2021; (7) one page showing fingerprint clearance cards; and

(8) a four-page supervised visitation discharge summary report dated November 9, 2021 to August 11, 2022.

¶8        On April 19, 2024—ten months after the court terminated Mother's rights and six months after DCS sent the late-disclosed documents—Mother moved to set aside the termination order based on the late disclosure.  She asserted that she had entered her no-contest plea after her attorney advised she had no potential defense to DCS's termination motion, but that the non-disclosed documents provided a potential defense.  Specifically, she alleged the nondisclosed NPP report would have allowed Mother to argue DCS failed to make a diligent effort to help her become a fit parent.

¶9        The court denied the motion as untimely because Mother filed it ten months after the termination order, citing Rule of Procedure for the Juvenile Court ("Juvenile Rule") 318(c) and Rule of Civil Procedure ("Civil Rule") 60(c), both of which require moving to set aside no later than six months after that order is filed.  The court acknowledged the unprecedented nature of DCS's systemic disclosure deficiency, but declined to excuse Mother's untimeliness, citing Civil Rule 60(c)(6), because the late-disclosed documents would not have changed the outcome.  The court also rejected the motion to set aside on the merits, finding Mother failed to show she had a meritorious defense. *See Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 89 ¶ 22 (2019) (requiring motion to set aside termination order to establish a meritorious defense).  Specifically, the court found the late-disclosed documents were cumulative of the evidence presented at trial or otherwise showed Mother's failure to complete services and therefore would not have changed the outcome.

¶10       Mother timely appealed.  Ariz. R.P. Juv. Ct. 603(a)(1)(A).  We have jurisdiction.  Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶11       Mother argues the juvenile court abused its discretion when it denied her motion to set aside the termination order because:  (1) DCS violated her due process rights when it did not disclose the NPP document before trial; and (2) her motion's timing was justified given the extraordinary circumstances of DCS's systemic nondisclosure.  She argues that nondisclosure kept her from having access to the relevant facts, so she did not knowingly, intelligently, and voluntarily plead no-contest to the termination motion.

4

**¶12**　　　　We review the denial of a motion to set aside for an abuse of discretion. *Trisha A.*, 247 Ariz. at 91 ¶ 27. A court abuses its discretion if its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101 ¶ 15 (App. 2007) (internal quotation omitted). We review a court's interpretation of procedural rules and whether a parent was afforded due process in juvenile proceedings de novo. *Angelica R. v. Popko*, 253 Ariz. 84, 88 ¶ 10 (App. 2022); *see Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 441 ¶ 15 (2018).

## I.　The Juvenile Court Did Not Abuse Its Discretion by Treating Mother's Motion to Set Aside the Termination Order as Untimely.

**¶13**　　　　Mother moved to set aside the termination order under Civil Rule 60(b)(1), (3), and (6) (made applicable here by Juvenile Rule 318), alleging the Guardian disclosure issues amounted to surprise, misconduct, or an extraordinary case. Mother argues the juvenile court erred by treating her motion to set aside as untimely because she did not learn about the late-disclosed documents until after the six-month deadline for motions to set aside expired. While the court had discretion to consider the motion in these circumstances, it did not err by declining to do so.

**¶14**　　　　Juvenile Rule 318(c) directs parties to file motions to set aside by invoking Civil Rule 60(b)-(d), as slightly modified. Juvenile Rule 318(c) requires that motions under Civil Rule 60(b)(1)-(3) be filed within three months of the final order and requires that motions under Civil Rule 60(b)(4)-(6) be filed within six months of the final order. Meanwhile, Civil Rule 60(c)(1) provides that the deadline for a motion to set aside "may not be extended by stipulation or court order," subject to exceptions not applicable here.

**¶15**　　　　Despite the strict language, this Court has held that a court nevertheless has discretion to address an untimely motion to set aside in limited circumstances. *See Angelica R.*, 253 Ariz. at 88-89 ¶¶ 13-14 (recognizing that Civil Rule 60's time constraints do not limit a court's authority to set aside judgment for fraud on the court or lack of jurisdiction). But Mother does not cite any authority requiring us to do so, and we know of none.

**¶16**　　　　Mother instead argues that a court must hear an untimely motion where failure to do so would infringe on a litigant's due process rights to a fair trial. *See State v. Vincent*, 147 Ariz. 6, 8 (App. 1985) (holding that court had discretion to address untimely motion to dismiss criminal

charges for preindictment delay "if precluding the motion would deny the defendant a fair trial"). But *Vincent*, which Mother cites, held only that a court has the discretion to hear an untimely motion in such circumstances—not that it must. And the Arizona Supreme Court has recognized that a court does not abuse its discretion by denying an untimely motion that alleges nondisclosure violated due process, where the defendant was not prejudiced by the nondisclosure. *See State v. Picket*, 121 Ariz. 142, 145 (1978). Mother also cites Juvenile Rule 315, which grants the court discretion to impose sanctions for disclosure violations, including "any order the court deems appropriate." Ariz. R.P. Juv. Ct. 315(g). But that too mistakes discretion to grant relief for a duty to do so, and in any event, runs afoul of Civil Rule 60(c)(1), which states the "deadline may not be extended by stipulation or court order[.]" Ariz. R. Civ. P. 60(c)(1).

¶17        On appeal Mother also argues, for the first time, that the termination order should be set aside under Civil Rule 60(b)(2), which governs motions arising out of newly discovered evidence. Mother's waiver of this argument by not asserting it below aside, we have declined to adopt a discovery rule for Civil Rule 60(b)(2) motions to set aside judgments for newly discovered evidence. *See McKernan v. Dupont*, 192 Ariz. 550, 554 ¶ 13 (App. 1998) (declining to adopt discovery rule for Rule 60(c)(2), now renumbered as Rule 60(b)(2)). As such, this argument also fails.

¶18        Because the juvenile court here reasonably found the nondisclosed documents were cumulative of the evidence presented at trial and would not have changed the result, the court did not abuse its discretion by denying Mother's motion to set aside as untimely. *See Adrian E.*, 215 Ariz. at 101 ¶ 15.

**II.    The Juvenile Court Did Not Abuse Its Discretion by Denying Mother's Motion to Set Aside the Termination Order for Lack of a Meritorious Defense.**

¶19        Because a motion to set aside a termination order challenges the final order's presumptive finality, and children subject to the termination order have an interest in permanency and stability, the movant must show a meritorious defense to the termination proceeding. *Trisha A.*, 247 Ariz. at 89 ¶ 22. A meritorious defense is "a good faith basis upon which" the court could find no "statutory basis for termination and/or that termination is not in the best interests of the child." *Christy A. v. Ariz. Dep't. of Econ. Sec.*, 217 Ariz. 299, 304 ¶ 15 n.11 (App. 2007).

**¶20**         A meritorious defense could arise if DCS fails in its constitutional duty to help reunite the parent with the child. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing fundamental liberty interest in care, custody, and management of children which "does not evaporate simply because [parents] have not been model parents or have lost temporary custody of their child to the State[]"); *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 581 ¶ 18 (2021) (acknowledging constitutional right to reunification services recognized in *Santosky*). Arizona's statutory scheme for termination honors a parent's constitutional rights by requiring DCS to make a diligent effort to help the parent become fit before it can move to terminate the parent's rights. A.R.S. § 8-533(B)(8). DCS fulfills this obligation when it "identif[ies] the conditions causing the child's out-of-home placement, provide[s] services that have a reasonable prospect of success to remedy the circumstances[,] . . . and make[s] reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 50 (App. 2019).

**¶21**         Mother argues she established a meritorious defense because the late-disclosed NPP report could support a defense that DCS did not make a diligent effort to help her become a fit parent. She argues the report indicates the NPP referral "was discontinued because she had not contacted it as promptly as expected, despite her explanation that the delay was necessitated by her participation in a drug-detoxification program[.]" The juvenile court disagreed, finding the NPP report was only further evidence of Mother's "unsuccessful completion of services" and thus "was cumulative to the 32 exhibits admitted at trial." The court concluded Mother did not show she had a meritorious defense because "[n]one of the late disclosed records would have impacted the Court's order terminating her parental rights[.]"

**¶22**         The record supports the juvenile court's determination. At trial, DCS case manager Boozhanof testified that DCS referred Mother to Terros substance abuse and NPP services multiple times, each of which were closed for lack of participation. Trial exhibits showed Mother was referred to—and did not complete—the NPP at least three times before the fourth and final referral discussed in the late-disclosed report. The exhibits also showed Mother was referred to—and did not complete—Terros substance abuse services at least four times. They also showed Mother unsuccessfully checked herself in and out of rehab on at least three occasions. While the late-disclosed report does acknowledge Mother omitted to respond to then-recent outreach attempts because she was in an inpatient detox program, other evidence admitted at trial showed Mother was only inpatient for six days and left the detox program before

completing it. Thus, the juvenile court reasonably concluded the report was cumulative to other evidence presented at trial and thus would not have changed the outcome because it did not show DCS failed to make a diligent effort to help Mother become a fit parent. *See Trisha A.*, 247 Ariz. at 91 ¶ 27; *Adrian E.*, 215 Ariz. at 101 ¶ 15. We therefore agree that Mother did not show a meritorious defense to termination.

## III. Mother's No-Contest Plea Was Valid.

**¶23** Before a court can accept a parent's no-contest plea in a termination proceeding, the court must find the plea was entered knowingly, intelligently, and voluntarily. Ariz. R.P. Juv. Ct. 353(e)(2). This requires the parent to freely relinquish their parental rights with a full understanding of the nature of those rights and the consequences of relinquishing them. *State v. Melendez*, 256 Ariz. 14, 25 ¶ 32 (App. 2023); *Timothy W. v. Dep't of Child Safety*, 240 Ariz. 232, 232 ¶ 6 (App. 2016).

**¶24** While the juvenile court found Mother entered her no-contest plea knowingly, intelligently, and voluntarily, Mother argues the late-disclosed documents nullify that finding. In her motion to set aside, Mother stated she entered the plea after being advised "there was no point in litigating any aspect of the severance motion." She now argues the late-disclosed NPP report changes this premise because it provides a potential insufficient efforts defense. We disagree.

**¶25** As explained above, the juvenile court did not abuse its discretion in finding the late-disclosed NPP report did not provide the basis for an insufficient efforts defense because it merely corroborated other evidence presented at trial that Mother continued to struggle with substance abuse and did not complete parenting classes. *See* Section II, *supra*. Additionally, the late-disclosed report did not change the nature of the parental rights Mother was waiving and did not change the consequences of waiving those rights. It therefore did not render her no-contest plea invalid. *See Melendez*, 256 Ariz. at 25 ¶ 32.

**CONCLUSION**

¶26        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR