NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ANDRI K., *Appellant*,

*v.*

RUSSELL J., A.J., P.J., *Appellees*.

No. 1 CA-JV 22-0094
FILED 9-27-2022

Appeal from the Superior Court in Yavapai County
No. P1300SV202100027
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Law Offices of Laura J. Taylor, P.L.L.C., Prescott
By Laura J. Taylor
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

¶1         Andri K. ("Mother") appeals the superior court's order terminating her parental rights to her children, A.J. and P.J. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2         A.J. was born in 2007 and P.J. was born in 2009. Mother and Russell J. ("Father") were married. Mother used methamphetamine but quit using drugs before the children were born. In 2010, Mother began drinking alcohol heavily and using drugs again. In 2015, Mother was arrested for driving under the influence and was incarcerated. Father divorced Mother and was given sole legal decision-making authority concerning the children, who lived with him. Mother had intermittent unsupervised visits with the children after she was released from prison. Nine-year-old A.J. was sexually assaulted by a thirteen-year-old boy while in Mother's care, and Mother gave A.J. pills and alcohol to get her high. Months would pass between visits when Mother's whereabouts were unknown.

¶3         Mother went back to prison for several years and was released in early 2020. She asked to have contact with the children, and Mother and Father participated in a family court mediation. As a result of the mediation, a parenting plan was put into place in July 2020. Under the parenting plan, Mother was required to demonstrate sobriety in order to have parenting time with the children by submitting to urinalysis testing for a period of six months. Mother failed to take any urinalysis tests. In February 2020, Mother gave the children some clothing, but did not thereafter provide them with any gifts or financial support.

¶4         In July 2021, Mother broke into Father's house. A.J. came home from school and found Mother crawling on the floor in her underwear screaming that she needed help and ranting about demons and witchcraft. Mother had sores all over her body and appeared unwell and

under the influence of substances. A.J., who was terrified, called Father, who arrived several minutes later and observed Mother with knives and acting paranoid. This was the last time Mother saw either of the children before the termination adjudication hearing.

¶5 Father filed a petition to terminate Mother's parental rights in August 2021, alleging abandonment under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1) and chronic abuse of dangerous drugs, controlled substances, or alcohol under A.R.S. § 8-533(B)(3). The court held a continued initial termination hearing in October 2021, and Mother appeared telephonically. At this hearing, the superior court set the dates for a pretrial conference and termination adjudication trial, and warned Mother that she needed to appear in person for those proceedings. Mother appeared at the pretrial conference, and the court continued the termination adjudication trial to allow a social study to be completed.

¶6 A.J. disclosed to the court appointed investigator that Mother had been abusive towards her when she was younger and Mother was under the influence of alcohol or drugs—Mother had locked A.J. in closets while using drugs with others and had slapped and hit A.J. and pulled her hair. A.J. described Mother as violent and "obsessed with the [S]atan stuff," which frightened A.J. More recently, Mother had been sending A.J. disturbing text messages which upset her. A.J. told the investigator she wanted Mother's parental rights terminated and wanted no further contact with Mother. Twelve-year-old P.J. told the investigator that he had seen Mother abusing A.J. and giving her drugs. P.J. feared Mother and also did not want visits or contact with her.

¶7 Mother failed to appear for trial, and her attorney informed the court that several hours before trial, Mother had emailed him asking for a continuance because she did not have a vehicle, did not have a phone, and was being evicted that day. Father and the children's attorney objected to a continuance. The superior court found that Mother had failed to show good cause for her failure to appear and deemed her failure to appear as an admission of the allegations in the petition. After hearing Father's testimony and considering the exhibits, the court terminated Mother's parental rights to the children pursuant to the grounds alleged in the petition. The court found by a preponderance of the evidence that termination was in the children's best interests.

¶8 Mother did not move to set aside the judgment. She timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. § 8-235(A).

**DISCUSSION**

I.      Mother's Failure to Appear

**¶9**          Although the right to the custody and control of one's child is fundamental, it is not absolute. *Michael J. v. Ariz. Dep't of Econ Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  If a parent is properly served with a termination petition, has notice of a hearing, and is advised of the consequences for failing to appear, but does not appear and no good cause is shown for that failure, the superior court may find the parent waived her rights and is deemed to have admitted the statutory bases for termination alleged in the petition.  *See* A.R.S. § 8-537(C), Ariz. R.P. Juv. Ct. 66(D)(2).[1]

**¶10**         Mother does not raise any issue about service or the notice she received that her parental rights could be terminated if she failed to attend hearings without good cause; she argues only that the superior court erred in concluding that she lacked good cause for her failure to appear.

**¶11**         We review the superior court's finding that a parent lacked good cause for her failure to appear for an abuse of discretion, "and generally will reverse only if the juvenile court's exercise of that discretion was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007) (citation and internal quotation marks omitted).  To show good cause to set aside a termination order, a parent must show: "(1) mistake, inadvertence, surprise or excusable neglect exists and (2) a meritorious defense to the claims exits." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 16 (App. 2007).  "Excusable neglect exists if the neglect or inadvertence is such as might be the act of a reasonably prudent person in the same circumstances." *Id.* (citation and internal quotation marks omitted).

**¶12**         We find no abuse of discretion.  A reasonable person would have used public transportation or a ride-hailing service to get to court if they did not have a vehicle or other transportation.  Mother emailed her attorney several hours before the termination adjudication hearing.  And Mother fails to explain why, if it occurred the day of the hearing, her eviction prevented her from coming to court.  If she was evicted, presumably Mother would have had notice of the eviction before the morning of the termination adjudication hearing.  On this record, the superior court's finding that Mother lacked good cause for her failure to

---

[1]      Rule 66(D)(2) is Rule 353(f), effective July 1, 2022.

appear was not manifestly unreasonable.  *See Adrian E.*, 215 Ariz. at 101, ¶ 15.

II.     Best Interests

**¶13**     Mother next argues that termination of her parental rights was not in the children's best interests.  We do not reweigh the evidence and will affirm the superior court's factual findings if supported by reasonable evidence.  *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 6 (App. 2016).  The superior court may terminate parental rights if it finds by clear and convincing evidence one of the statutory grounds for termination, and also finds by a preponderance of the evidence that termination is in the best interests of the child.  *Id.* at 98, ¶ 7.

**¶14**     Termination is in a child's best interests if the child would "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004).  The superior court evaluates the totality of the circumstances when determining whether termination is in the best interests of the child, considering factors such as the bond between the parent and child, any risk for abuse or neglect if the relationship is not terminated, and the negative effect on a child of the continued presence of a statutory termination ground.  *Dominique M.*, 240 Ariz. at 98-99, ¶¶ 10-12.  Evidence that a child has a prospective adoptive parent or parents is only one way of showing an affirmative benefit, and the lack of that circumstance in this case is not a relevant consideration here, as Mother suggests.  In this case, Father is unmarried.  *See, e.g.*, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 1 (2016) (superior court "may conclude that a proposed [step-parent] adoption benefits the child and supports a finding that severance is in the child's best interests" in a private termination proceeding, "just as in state-initiated proceedings.").

**¶15**     The superior court found that termination was in the children's best interests based in part on Father's testimony that Mother had abandoned the children and had behaved in ways that traumatized them. The court also considered the social study, which concluded that termination was in the children's best interests because Mother's abandonment of the children and her chronic abuse of dangerous drugs had negatively impacted them, and her behaviors were likely to continue as evidenced by her "lack of efforts to discontinue them."

**¶16**     Reasonable evidence supported the superior court's best interests finding.  The evidence showed that Mother abandoned the

children by failing to maintain regular contact with them including providing normal supervision and support. She failed to make any meaningful effort to address her substance abuse problem in order to have contact with the children under the parenting plan and continued to interact with them in ways that disturbed and upset them. As a result, the children voiced, to the court appointed investigator and through their attorney at trial, their desire that Mother's parental rights be terminated. The evidence presented showed that denying termination would subject the children to a risk of continued emotional harm, and granting termination would provide the children with stability. The superior court considered the totality of the circumstances and found that termination was in the children's best interests. We find no error in the superior court's finding.

**CONCLUSION**

¶17        For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights.

