NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.G., B.B., and
H.B.

No. 1 CA-JV 23-0117
FILED 2-8-2024

---

Appeal from the Superior Court in Yavapai County
No. P1300JD202200002
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Appellee*

Myers & Associates PLLC, Scottsdale
By Jamie N. Myers
*Counsel for Appellee Children*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

---

**C A T L E T T**, Judge:

¶1            Tiffany G. ("Mother") appeals the juvenile court's termination of her parental rights to three children.  Because Mother did not show good cause for failing to appear at the initial termination hearing, sufficient evidence supported termination, and termination was in the children's best interests, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of C.G. (born in March 2016), B.B. (born in June 2021), and H.B. (born in July 2022) (collectively, "Children").  After receiving reports that Mother was not providing proper care for Children, the Department of Child Services ("DCS") petitioned to have C.G. and B.B. declared dependent.  When Mother did not contest the allegations, the juvenile court adjudicated C.G. and B.B. dependent.  As a newborn, H.B. was hospitalized with several congenital conditions stemming from a shortened bowel.  H.B.'s medical providers recommended that she reside no more than an hour away from Phoenix due to her anticipated medical needs.  After H.B. was discharged from the hospital in September 2022, DCS petitioned to have H.B. declared dependent.  Mother did not contest the petition's allegations, and the juvenile court adjudicated H.B. dependent.

¶3            Both before and after the dependency proceedings, Mother struggled with substance abuse.  In January 2022, she tested positive for methamphetamine and THC.  She failed to provide urine samples for testing from the end of July 2022 until January 2023, despite claiming to be sober.  When she finally provided a sample in January 2023, she tested positive for methamphetamine.

¶4            DCS also documented that Mother inconsistently participated in services and consistently offered excuses for poor attendance, which resulted in her being dropped from multiple services for non-attendance.

DCS arranged transportation for Mother, but she either cancelled or refused transportation when it arrived.

¶5             Initially, Mother's housing did not have running water and DCS expressed concern about sufficient heat because Mother could not afford propane.  DCS reported that Mother later found a residence that could be suitable, but DCS had not been able to determine by the time of termination if the residence could meet H.B.'s medical needs.

¶6             DCS also documented domestic violence between Mother and B.B. and H.B.'s father ("Father").  Father was arrested and served time in jail stemming from a domestic-violence incident with Mother.  DCS believed Father was residing with Mother after his release.  He denied living with Mother but did not confirm to DCS where he otherwise lived.

¶7             Mother inconsistently visited Children.  She attended less than half of her scheduled visits with C.G. and B.B.  Mother spent "minimal" time with H.B. in the hospital, either arriving late or ending visits early.  The medical staff struggled to contact her, and they described Mother as being "covered in dirt and smelling of cigarettes" when she did visit.

¶8             In March 2023, DCS moved for termination and sent a notice to Mother about the initial hearing.  The notice included the date and time for the hearing and explained the potential consequences for failing to appear, including termination of parental rights.

¶9             Mother did not attend the initial termination hearing on April 18, 2023.  Mother's attorney explained to the court that Mother sent "numerous e-mails" that morning explaining that her car had broken down.  DCS informed the court that it had e-mailed Mother a week before the hearing to confirm whether she needed transportation.  Mother responded yes, and "within minutes" DCS requested a location to pick her up, but Mother never responded.  DCS did not know where to pick Mother up because she had been evicted from her last residence.  The court found Mother failed to appear without good cause, proceeded with an accelerated termination hearing, and found that Mother's non-appearance resulted in her admitting the allegations in the termination motion.

¶10            The DCS case manager testified Children were dependent because of substance abuse, lack of housing, and domestic violence.  Then, by mostly answering "yes" to a series of leading questions, the DCS case manager explained the reason Mother's parental rights should be terminated.  The case manager asserted that Mother continued to use drugs,

did not regularly participate in rehabilitative services, and failed to make the necessary changes to ensure Children's safety.

¶11 The DCS case manager testified that B.B. and C.G. were in adoptive placement with family. H.B. was not in adoptive placement because she needed to reside within one hour of Phoenix, but she had family members who were actively involved and willing to adopt her once the one-hour restriction was lifted. The DCS case manager testified that continuing the parent-child relationship would be detrimental to Children because of "the illegal substance used by [Mother] and because of the domestic violence in the home." The court also took judicial notice of prior DCS court reports.

¶12 The court found there was clear and convincing evidence to terminate Mother's parental rights under A.R.S. § 8-533(B)(3) because her "continued drug use has prevented her from adequately parenting the [C]hildren in a safe home environment." The court also found termination was appropriate as to H.B. under A.R.S. § 8-533(B)(8)(b) because she had been in out-of-home placement for six months, and as to C.G. and B.B. under A.R.S. § 8-533(B)(8)(c) because they had been in out-of-home placement for fifteen months. The court found by a preponderance of the evidence that termination was in Children's best interests because adoption would provide permanency and stability, and continuing the parent-child relationship would be detrimental because of Mother's substance abuse and her ongoing relationship with Father.

¶13 Mother timely appealed. We have jurisdiction. *See* A.R.S. § 8-235(A).

## DISCUSSION

¶14 Mother argues she had good cause for failing to appear at the initial termination hearing and that she is not required to show she had a meritorious defense. If she is required to show a meritorious defense, she says she had two—there was insufficient evidence for termination and termination was not in Children's best interests.

¶15 "Parents have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79 ¶ 14 (App. 2001). We will affirm a juvenile court's termination order unless it is clearly erroneous. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018).

## I. Mother's Required Showing

¶16 Mother first argues that she need only show good cause for her failure to appear and is not required to demonstrate a meritorious defense. Mother cites our supreme court's decision in *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84 (2019), for the proposition that a meritorious defense is not required "because the good cause inquiry centers on the justification for nonappearance at a hearing and necessarily precedes a final severance judgment."

¶17 Mother misconstrues *Trisha A.* and the rules of procedure underlying its analysis. The supreme court held in *Trisha A.* that "a parent seeking to set aside a severance judgment entered after failing to appear at the final severance hearing . . . must show 'good cause' for the nonappearance and a meritorious defense." *Id.* at 89 ¶ 19. The court explained that the juvenile court's inquiry into the reasons for non-appearance prior to, or during, a hearing is centered exclusively around "good cause." *Id.* at 89 ¶ 21. "Thus, parents who appear before the end of a hearing . . . are not required to show a meritorious defense because they are not seeking to set aside a judgment but rather to establish good cause for their late appearance." *Id.* But once the juvenile court finds that a parent does not have good cause for non-appearance and *enters judgment*, the parent must provide "good cause" and a meritorious defense to have the judgment set aside. *Id.* at 89 ¶ 22. "At this procedural stage, a parent must provide 'good cause' for their nonappearance *and* prove a meritorious defense." *See id.*

¶18 During the termination hearing itself, Mother did not have to demonstrate a meritorious defense to show good cause for her non-appearance. *See id.* at 89 ¶ 19. But because the juvenile court found that Mother did not have good cause for her non-appearance and then entered judgment terminating her parental rights, Mother is now required to show good cause *and* a meritorious defense. *Id.* at 89 ¶ 22.

## II. Good Cause

¶19 Mother asserts she had good cause for her absence. She argues DCS was aware that she was evicted, did not have a cell phone, and was unable to pay for transportation to attend the hearing. We review the juvenile court's finding that a parent failed to appear without good cause for an abuse of discretion and will reverse only if "the juvenile court's exercise of that discretion was 'manifestly unreasonable, or exercised on

untenable grounds, or for untenable reasons.'" *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101 ¶ 15 (App. 2007) (citation omitted).

**¶20** Good cause requires "mistake, inadvertence, surprise or excusable neglect[.]" *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304 ¶ 16 (App. 2007). Excusable neglect is viewed according to how a reasonably prudent person would act in the same circumstances. *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 163 (App. 1993). Because accelerating a termination hearing is discretionary, the juvenile court should "consider a parent's willingness to participate in the case, including availing themselves of services . . . and the stage of the process." *Trisha A.*, 247 Ariz. at 88 ¶ 14.

**¶21** The juvenile court did not abuse its discretion in finding Mother was absent without good cause. Mother argues that transportation issues prevented her from attending the hearing. This, however, was not Mother's first time with transportation issues. Rather, Mother experienced transportation issues throughout the proceedings. DCS, therefore, offered Mother transportation services. On several occasions, DCS arranged for transportation, but Mother was not present for pickup or declined transportation. Other times, Mother claimed her vehicle had broken down, preventing her from making it to the transportation provider's pickup spot to attend certain services. On a few occasions, Mother was able to find alternative transportation for visitation.

**¶22** DCS informed the court that one week prior to the termination hearing, DCS contacted Mother to ask whether she needed transportation to the hearing. Mother responded that she needed transportation. DCS was aware that Mother had been evicted and, therefore, it did not know where she was living. So DCS repeatedly asked Mother for an address where she could be picked up. Mother never responded. Yet, on the morning of the hearing, Mother sent her counsel numerous emails claiming that her car had broken down and her phone was not in service. Mother has never adequately explained why she was able to contact counsel by email but did not respond to DCS's repeated requests for an address. Mother has also not explained why she did not arrange for alternative transportation given the unreliability of her vehicle. Even when it became apparent that Mother would not be able to attend the hearing, she did not seek a continuance. The superior court did not abuse its discretion in finding that Mother's absence was without good cause. *See Adrian E.*, 215 Ariz. at 101 ¶ 15.

### III.   Meritorious Defense

**¶23**          Mother argues she has a meritorious defense because there was insufficient evidence supporting termination and termination was not in Children's best interests.  To terminate a parent's rights, the juvenile court must find by clear and convincing evidence that at least one of the grounds in A.R.S. § 8-533(B) exists and must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000).  We will "affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022).  We will accept the juvenile court's factual findings if supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, ___ ¶ 30 (2023).  We will not disturb the juvenile court's conclusions for insufficient evidence unless no one could reasonably find the evidence to be sufficient.  *Id.* at ___ ¶ 31.

### A.   Statutory Grounds for Termination

**¶24**          Mother argues that the DCS case manager's testimony, which mostly consisted of "yes" answers to leading questions, did not provide enough specificity for the court to justify termination.  Mother, however, did not object to the form of questioning.  But even without that testimony, the record sufficiently supports the court's findings. *See Alice M. v. Dep't of Child Safety*, 237 Ariz. 70, 74 ¶ 13 (App. 2015).

**¶25**          The court found the evidence satisfied A.R.S. § 8-533(B)(3) as one ground for termination.  That statute permits termination if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs [or] controlled substances . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).  The record reflected Mother's positive drug tests for methamphetamine and THC in January 2022 and methamphetamine in January 2023, along with her avoidance of testing and inconsistent participation in services, including substance-abuse treatment. *See Raymond F. v. Dep't of Child Safety*, 224 Ariz. 373, 379 ¶¶ 27, 29 (App. 2010) (noting parent's history of drug use, positive drug tests, and "a two-month period in which he did not submit to testing" as "evidence [the parent] has not overcome his dependence on drugs" and that drug use was chronic and would continue).  Not only does Mother not dispute any of these facts, but the court also found Mother's failure to appear constituted an admission to the allegations in the motion for

termination. *See* Ariz. R.P. Juv. Ct. 351(c)(2)(A). One could reasonably find those admissions and the other evidence presented during the termination hearing sufficient to satisfy A.R.S. § 8-533(B)(3) by clear and convincing evidence. *See Brionna J.*, 255 Ariz. at ___ ¶ 31. We, therefore, need not address whether Mother has a meritorious defense to the other statutory grounds for termination. *Raymond F.*, 224 Ariz. at 376 ¶ 14.

### B.     Children's Best Interests

**¶26**        Mother also argues termination was not in Children's best interests because C.G. and B.B. were in adoptive placements with family members, and H.B. was not officially in adoptive placement because of her medical restrictions. Termination is in a child's best interests if DCS proves by a preponderance of the evidence that (1) the child will benefit from termination, or (2) the child will be harmed without termination. *Alma S.*, 245 Ariz. at 150 ¶ 13. The juvenile court must consider the totality of circumstances at the time of termination. *Id.*

**¶27**        The court found termination was in Children's best interests because adoption would provide permanency and stability, and continuing a relationship with Mother would be detrimental because of her drug use and ongoing relationship with Father. Mother's argument focuses on Children's placement—C.G. and B.B. with family and H.B. in a group home—stating they "received no benefit" from terminating her parental rights. While not the only fact to consider, "[i]t is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Id.* (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016)). Two of the three children were in adoptive placement with family and the other can be when medical restrictions are lifted. Adoption will provide Children with the benefit of permanency and stability in their relationship with adoptive placements.

**¶28**        Mother also challenges the court's finding of continued harm—she argues the testimony did not include sufficient details about her use of illegal substances or involvement in domestic violence. But the record includes evidence about Mother's substance abuse and lack of participation in services, and a domestic violence incident between Mother and Father in January 2023, that resulted in Father's incarceration. Moreover, DCS believed Father was residing with Mother following his release and at the time of termination. We find no error in the court's conclusion that Children would be harmed if termination was denied.

**CONCLUSION**

**¶29**        We affirm the juvenile court's termination of Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA