NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO H.K.

No. 1 CA-JV 25-0131

FILED 02-25-2026

Appeal from the Superior Court in Mohave County
No. S8015SV202400044
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Robert. K., Lake Havasu City
*Appellant*

The Law Offices of Robert Casey, Phoenix
By Robert Ian Casey
*Advisory Counsel for Appellant*

Genesis Legal Group, Glendale
By Alyssa N. Oubre
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which
Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

**P A T O N**, Judge:

¶1         Robert K. ("Father") appeals the juvenile court's order terminating his parental rights to H.K.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         We view the facts in the light most favorable to upholding the juvenile court's termination order.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

¶3         H.K., who was born in July 2019, is Father's biological child.  After H.K.'s birth, Angela B. ("Mother") and H.K. moved to California to live with Angela's father and stepmother.  Mother subsequently petitioned for parenting time and legal decision-making for H.K.  In October of that year, the superior court ordered Father to undergo urinalysis testing, which returned positive results for THC and amphetamines.  The court ordered Father to complete a hair follicle test, but he failed to comply.

¶4         In December 2020, the court adopted the parties' agreement that Mother have sole legal decision-making authority as to H.K., granted Father parenting time every other weekend contingent upon his sobriety proven by compliance with drug testing, and ordered Father to pay Mother $300 per month in child support.  Father, however, did not regularly test, and Mother declined to allow him parenting time with H.K. as a result.

¶5         Father saw H.K. nine times between September 2023 and August 2024 and did not see H.K. at all between August 2024 and December 2024.  During the summer of 2024, Mother offered to let Father watch H.K. while she worked, but Father consistently declined.  And Father regularly failed to pay child support.  He paid for H.K.'s daycare until H.K. stopped attending around July 2024.  His final child support payment was $100 in August 2024; after that, he paid no more.

¶6         In December 2024, Mother petitioned to terminate Father's parental rights as to H.K. based on abandonment and chronic substance abuse grounds.  The juvenile court appointed an investigator who interviewed Mother, Father, and H.K., documented the family history, and prepared a social study.  During Father's interview with the investigator, he admitted he had not seen H.K. for the prior eight months and that he was not paying child support on a regular basis.  He reported he should not have to pay child support because he was not seeing H.K.

¶7             Father initially told the investigator he had no drug charges and no problems with probation but later admitted to being charged with possession of drug paraphernalia.  Father also claimed he had never tested positive for drugs while on probation, which was false.  Mother reported that Father's probation was revoked in 2024 after he tested positive for methamphetamine and cocaine.  The investigator concluded that Mother appropriately denied visitation based on Father's failure to drug test and recommended termination based on Father's abandonment of H.K.

¶8             The juvenile court set a contested termination trial for June 16, 2025, at 8:30 a.m.  Father was informed of the date and time while present at a scheduling conference on May 8, 2025.  Father, however, failed to appear in person or virtually on the trial date.  Father's attorney told the court she mistakenly told Father the trial began at 9:00 a.m. and asked the court to waive his appearance during the beginning of testimony and not find him in default.  She also said she had been communicating with Father via email that morning "on at least four occasions."  The court delayed the trial start time until a few minutes after 9:00 a.m. at which time Father still had not appeared.  It found no good cause for his failure to appear, found him in default, and proceeded in his absence.

¶9             After hearing from Mother, the social study investigator, and Mother's fiancé Christopher M. ("Fiancé"), the juvenile court found Mother had proven the abandonment ground by clear and convincing evidence but not the chronic substance abuse ground.  The court then found it was in H.K.'s best interests to terminate Father's parental rights.

¶10             Father timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

¶11             Father argues (1) the juvenile court improperly found Father failed to appear without good cause and held him in default, (2) Mother improperly prevented him from seeing H.K., excusing his abandonment, and (3) termination was not in H.K.'s best interests.

¶12             We note at the outset Father failed to cite any legal citation or the record in his opening brief.  An opening brief must include an argument containing the appellant's contentions about the issues presented, along with supporting reasons and citations to the record and legal authority.  ARCAP 13(a)(7); *see also Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶

62 (App. 2009). An appellant's failure to support or develop an argument waives the issue on appeal. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007). The decision to find waiver, however, is discretionary, *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 536, ¶ 9 (App. 2018), and because the best interests of a child are at stake, we decline to do so here and will address the merits, *see Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013).

**¶13** To terminate a parent-child relationship, the juvenile court must find (1) by clear and convincing evidence that at least one statutory ground for termination exists and (2) by a preponderance of the evidence that the termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018); *see also* A.R.S. § 8-533(B) (listing grounds for termination). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We therefore affirm the juvenile court's factual findings if supported by reasonable evidence. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 93-94, ¶ 4 (App. 2009).

## I. The juvenile court did not abuse its discretion by finding Father in default.

**¶14** Father argues the court abused its discretion in finding him in default, arguing that his absence should be excused because he was misinformed about the hearing time, experienced poor cell service, and had no Wi-Fi connection. A finding of good cause for failure to appear rests within the juvenile court's discretion. *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 101, ¶ 15 (App. 2007). Therefore, we review for abuse of discretion, which occurs if the juvenile court's exercise of its discretion was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Id.* (citation omitted).

**¶15** If a parent fails to appear at a pretrial conference, status conference, or termination trial, and the court confirms the parent received the required notice under Section 8-535, the court may deem the parent to have "waived his or her legal rights and admitted the petition's allegations." *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 58, ¶ 27 (2017); A.R.S. § 8-535(D). The court may then "terminate the parent's rights based on the record and evidence presented." *Marianne N.*, 243 Ariz. at 58, ¶ 27; A.R.S. § 8-537(C). Although Section 8-537(C) does not explicitly reference "default," it effectively incorporates the concept from Rule 55 of the Arizona Rules of Civil Procedure when a parent fails to appear at a

termination hearing. *See Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 304, ¶ 14 (App. 2007). But a parent does not waive his rights and admit the petition's allegations if he shows good cause for the absence, which requires him to show both "excusable neglect" and a "meritorious defense." *See id.* at ¶ 16.

**¶16**		Here, Father failed to appear at trial despite being properly notified of the date and time in open court on May 8, 2025. Father was also not prejudiced when his attorney mistakenly told him the trial started at 9:00 a.m. because the court waited to start the trial until after 9:00 a.m. And while the court indicated it would proceed in his absence, it noted he could appear in person or virtually at any time during the proceedings. He did not. We are not persuaded by Father's claimed poor cell service and lack of Wi-Fi because his attorney told the court she had been communicating with Father that morning and he expressed no issues about connecting remotely. Father's counsel cross-examined witnesses and otherwise participated in the trial on his behalf. The court did not abuse its discretion by finding Father in default. *See Marianne N.*, 243 Ariz. at 58, ¶ 27; A.R.S. § 8-537(C).

## II.	The juvenile court's termination order is not clearly erroneous.

**¶17**		Father next argues that he did not abandon H.K.; rather, Mother improperly prevented him from seeing H.K. by avoiding his phone calls and refusing to let him pick up H.K. from school.

**¶18**		Whether abandonment occurred is a question of fact for the juvenile court, and we will affirm its termination order unless clearly erroneous. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000); *In re B.W.*, 153 Ariz. Cases Dig. 19, 25, ¶ 14 (2025). A parent abandons his or her child when he fails "to provide reasonable support and to maintain regular contact with the child" and instead only makes "minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). A parent's "[f]ailure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id.*; *In re B.W.*, 153 Ariz. Cases Dig. at 25, ¶ 15.

**¶19**		Here, the juvenile court found Father failed to maintain a normal parent-child relationship with H.K. for more than six months. Father saw H.K. only nine times between September 2023 and August 2024 and had no contact with H.K. at all from August through December 2024. The court further noted Father had provided H.K. no financial support between his $100 child support payment in August 2024 and the trial in

June 2025. Mother's testimony and the investigator's testimony and social study support these findings.

¶20 Further, Father's arguments are inconsistent with the facts. Mother reported to the investigator that she offered Father the opportunity to be more involved in H.K.'s life — for example, by inviting him to watch H.K. while she worked throughout the summer of 2024 — but Father consistently declined. And Father did not dispute at trial that he agreed to the arrangement that the court adopted early on regarding Father's parenting time. That agreement specifically provided that Father could only exercise parenting time if he drug tested to prove sobriety — which he did not do. Mother testified she repeatedly told Father he could see H.K. if he submitted to drug testing, yet Father refused to do so. Reasonable evidence supports the juvenile court's finding that Father abandoned H.K.

## III. Reasonable evidence supports the juvenile court's best interests findings.

¶21 Finally, Father argues he "has a lot to offer his son," so it was not in H.K.'s best interests to terminate his parental rights.

¶22 We will affirm the juvenile court's best interests findings if supported by reasonable evidence. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 6 (App. 2016). After finding a statutory ground for termination exists, the juvenile court must then determine whether termination is in the best interests of the child by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Once the court finds a parent unfit under at least one statutory ground for termination, "termination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150, ¶ 13.

¶23 "[A] determination of the child's best interests must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *In re Appeal in Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1. The court may find a child would benefit from termination if there is an adoption plan in place, or if the child is considered adoptable — even if only one parent's rights are terminated. *See In re M.L.*, 162 Ariz. Cases Dig. 13, 17-18, ¶¶ 13-17 (App. 2025).

**¶24** In finding that termination was in H.K.'s best interests, the court relied on his adoptability and Fiancé's plan for adoption. Mother and Fiancé were scheduled to marry in June 2025 and Fiancé testified he intended to adopt H.K. as soon as possible. The court found Mother provided H.K. with a loving, nurturing home where he is thriving. The court further found H.K. and Fiancé shared an "amazing relationship," noting they spent significant time together, and already have a parent-child relationship. Fiancé testified that he regularly took H.K. to and from school, prepared his meals, and engaged in various activities with him, such as video games and taking him to the park. Fiancé also testified he is an attorney and financially capable of supporting H.K.

**¶25** H.K.'s attorney also argued that termination was in H.K.'s best interests because it would allow for Fiancé to adopt and give him a safe and stable home. Although Father argues he has much to offer his son, we do not reweigh the evidence on appeal. *See Alma S.*, 245 Ariz. at 151, ¶ 18. Reasonable evidence supports the court's best interests findings.

## IV. Mother's Answering Brief

**¶26** Mother's answering brief contains what appear to be hallucinated quotations from statutes and cases.

**¶27** Mother claims that Section 8-531(1) states that "[a]bandonment is measured by a parent's conduct, not the parent's subjective intent." Mother also claims Section 8-533(B)(1) provides that abandonment is established when the parent has failed to maintain a normal parental relationship "without just cause." These statutes do not contain the language Mother quotes.

**¶28** Mother also claims *Raymond F. v. Department of Economic Security*, 224 Ariz. 373, 378, ¶ 21 (App. 2010), contains the following quote: "[a] parent who creates barriers to contact through substance abuse cannot claim just cause for his failure to maintain a relationship." This quote does not exist in the case.

**¶29** Finally, Mother cites *JS-501568*, 177 Ariz. at 577, claiming it states, "[a] parent's ability to maintain a relationship must be judged by what they do, not what another parent does or does not do." Mother also claims this case holds that Arizona courts consistently find: "[m]inimal efforts do not preclude abandonment . . . sporadic or infrequent contact is not normal parental contact." We are unable to find these quotes within this case.

¶30 Counsel has ethical duties of candor to this court and to certify that representations made to this court are accurate. Ariz. R. Sup. Ct. 42, ER 3.3; Ariz. R. Civ. P. 11(b); *see also Mangan v. Mangan*, 227 Ariz. 346, 353-54, ¶¶ 29-32 (App. 2011) (sanctioning counsel for misrepresenting the record and relying on inappropriate legal authorities). We will forward this decision to the State Bar of Arizona to determine whether Mother's counsel violated any rules of professional conduct.

## CONCLUSION

¶31 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR